

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

September 10, 1957

Honorable Homer Garrison, Jr.
Director, Texas Department of
  Public Safety
Austin, Texas

Opinion No. WW-256

Re: Whether the Dallas-Fort
Worth Turnpike is a
public highway within
the meaning of that term
as defined in the Uniform
Act regulating traffic on
highways and related
questions.

Dear Colonel Garrison:

Your request for an opinion, dated August 29, 1957, raises three questions, each of which concerns the applicability of various traffic regulations to the Dallas-Fort Worth Turnpike. The questions propounded are as follows:

1. Is the Dallas-Fort Worth Turnpike, which was constructed by the Texas Turnpike Authority pursuant to Acts of 1953, 53rd Legislature, page 967, Chapter 410, a public highway within the meaning of that term as defined in the Uniform Act regulating traffic on highways? (Article 6701d, Revised Civil Statutes).

2. Is the Dallas-Fort Worth Turnpike a public highway within the meaning of the laws relating to drunk driving? (See Penal Code, Article 802 and the immediately succeeding Articles).

3. Do the speed laws of Texas apply on the Dallas-Fort Worth Turnpike? (Penal Code, Article 827a, Section 8, Subsection 1).

The Texas Turnpike Authority was created by Acts 53rd Legislature, 1953, Chapter 410, page 967, codified as Article 6674v of Vernon's Civil Statutes. The caption of the Act creating the Turnpike Authority recites the creating of the Authority as a body politic and agency of the State.

Section 3 of the Act constitutes the Turnpike Authority an agency of the State of Texas and provides that the exercise by the Authority of the powers conferred by the Act shall be deemed and held to be an essential governmental function of the State.

Section 5 of the Act enumerates the duties and powers of the Authority. Among the powers enumerated is the authority to construct, maintain, repair and operate turnpike projects at such locations within the State as may be determined by the Authority subject to approval as to location by the State Highway Commission.

The Turnpike Authority is further authorized to fix, charge and collect tolls for the use of each turnpike project, the tolls collected to provide a fund sufficient with other revenues, if any, to pay: (a) the cost of maintaining, repairing and operating such turnpike project, and (b) the principal of and the interest on the authorized bonded indebtedness of the Authority as same shall become due and payable.

Section 15 of the Act relieves the Turnpike Authority from the obligation of paying taxes or assessments upon any turnpike project or any property acquired or used by the Authority under the provisions of the Act or upon the income therefrom.

We do not deem it necessary for purposes of this opinion to further consider the various statutory provisions relating to the organization and operation of the Authority except as it may become necessary to make incidental reference to same in the consideration of the specific questions propounded.

Your first question concerns the applicability of Article 6701d, of Vernon's Civil Statutes, to vehicular traffic operating on the Dallas-Fort Worth Turnpike. The foregoing Article is popularly referred to as the Uniform Act Regulating Traffic on Highways. The Dallas-Fort Worth Turnpike was constructed and is operated pursuant to the authority contained in the 1953 Act, establishing the Texas Turnpike Authority. Section 21 of Article 6701d reads as follows:

"The provisions of this Act relating to the operation of vehicles refer exclusively to the operation of vehicles upon highways except:

"1.   Where a different place is specifically referred to in a given Section.
"2.   The provisions of Articles IV and V shall apply upon highways."  (Emphasis added).

Section 13 of said Article defines "street or high-way" as being "The entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel." (Emphasis added)

Your second question concerns the applicability of Article 802 of Vernon's Penal Code to vehicular traffic on the Dallas-Fort Worth Turnpike.  The offense denounced in Article 802 is the driving and operating of a motor vehicle upon any public road or highway in this State, or upon any street or alley within the limits of an incorporated city, town or village, while the operator of such vehicle is intoxicated or under the influence of intoxicating liquor.

Your third question concerns the applicability of Subsection 1, Section 8 of Article 827a of Vernon's Penal Code to vehicular traffic upon said Turnpike.  This provision of the Penal Code prescribes certain prima facie speed limits upon the highways of the State.  Subsection 1 reads in part as follows:

"No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing, . . ."

The answer to each of the three questions submitted, and the applicability of each of the foregoing statutes to traffic violations on the Dallas-Fort Worth Turnpike, hinges upon the question of whether or not the Dallas-Fort Worth Turnpike is a public highway within the meaning and contemplation of the statutes cited.  On the question of whether a "highway" includes turnpikes and toll roads, 54 Am. Jur. 495 states:

"In its broad, popular sense, the term 'public highways' is considered as including turnpikes or toll roads, and, generally speaking, in statutes referring to public highways the term is used with that meaning.  Thus, for example, turnpikes have been held highways within the meaning of statutes respecting . . . the power of public officials to discontinue or alter parts of a 'public road or

highway' interfering with other public works, the
regulation of cattle running at large on highways,
and the speeding of automobiles on public highways."

Speaking of the Dallas-Fort Worth Turnpike and the
authority of the Texas Turnpike Authority to establish the
same, the Supreme Court of Texas in the case of Texas Turn-
pike Authority v. Shepperd, 154 Tex. 357; 279 S.W.2d 308,
said:

". . . The Toll road when completed will in
effect be a part of the highway system of the State
and when the bonds are retired through the collec-
tion of tolls, the toll road, together with all
assets of the Authority will become the property of
the State of Texas as a part of the free highway
system, Section 18, and shall thereafter be main-
tained by the State Highway Commission free of tolls,
Section 19. . . ." (Emphasis added).

The following cases from other jurisdictions sustain
the view that turnpikes and toll roads are public highways:
Dodge County Commissioners v. Chandler, 96 U.S. 205, 24 L. Ed.
625; Commonwealth v. Wilkinson, 33 Mass. 175, 26 Am. Dec. 654;
Arkansas State Highway Commission v. Southwestern Bell Tele-
phone Co., 206 Ark. 1099, 178 S.W. 2d 1002; House v. Pennsyl-
vania Turnpike Commission, Com. Pl., 53 Dauph. Co. 38, 90 P.L.J.
328. See also 90 C.J.S. 973 and cases there cited.

In this connection, the case of Victor Rios Salazar
v. The State of Texas, 275 S.W.2d 113 (Crim.App.) is highly
pertinent. The evidence in the case showed that the defendant
had been arrested, tried and convicted on a charge of driving
and operating a motor vehicle upon a public highway while
intoxicated. Both the arrest and the offense occurred on the
American side of the International Toll Bridge extending from
Juarez, Mexico, to the City of El Paso. It was urged that the
bridge was not a public road or highway within the meaning of
the statute, Article 802, Vernon's Penal Code. In reply to
this contention the Court of Criminal Appeals said:

"The bridge was open to the use of and at the
time was being used by the public in general
as a highway and thoroughfare. We deem this
sufficient to constitute the bridge a public
road within the statute prohibiting drunken
driving. . . . Moreover the general and ac-
cepted rule appears to be that a toll road

or turnpike is a public highway within the meaning of statutes regulating the driving and operation of motor vehicles thereon. 54 Am. Jur. Turnpikes and Toll Roads, Sec. 3, p. 495."

In the case of Dodge County Commissioners v. Chandler, supra, the Supreme Court of the United States held in substance that public highways include turnpikes, used as thoroughfares, and the charge of toll over them in no way affects their character as public highways. The Court further said that they are public because of the right of the public to use them.

It is noted that Article 6701d, supra, in its definition of a street or highway requires that such thoroughfare be not only open to the use of the public for purposes of vehicular travel, but that same must also be publicly maintained.

In view of the foregoing authorities there can be room for little doubt that the Dallas-Fort Worth Turnpike is open for the use of the public, and the fact that a toll is exacted for the privilege of using said turnpike does not alter the situation. We think it equally clear that said turnpike is also publicly maintained within the purview and meaning of Article 6701d. Mention has already been made of the fact that the Texas Turnpike Authority is by statute expressly made an agency of the State. Hence it must inevitably follow that the tolls collected by said Authority pursuant to statute, and used for the construction and maintenance of the respective turnpikes, are, in all respects, public funds. These moneys are collected by the Turnpike Authority as an instrumentality of the State pursuant to legislative authority and are disbursed in the same manner.

If the Dallas-Fort Worth Turnpike is held not to be a public highway within the meaning of the foregoing traffic laws, it must be by reason of Section 4 (c) of the Acts creating and defining the authority of the Texas Turnpike Authority. This Section reads in part as follows:

"Provided, however, any 'Project' or 'Turnpike Project' which the Authority may construct under the authority of this Act shall at all times be deemed a public highway within the meaning of Chapter 270, page 399, Acts, Fortieth Legislature, 1927, as amended, by Chapter 78, page 196, Forty-first Legislature, First Called Session, 1929, and Chapter 314, page 698, Acts, Forty-first Legislature, 1929, as amended by Chapter 277, page 480,

Acts, Forty-second Legislature, 1931, as amended by Chapter 290, page 463, Acts, Forty-seventh Legislature, 1941, and to that end no motor bus company, common carrier motor carrier, specialized motor carrier, contract carrier or other motor vehicle operation for compensation and hire shall be conducted thereon except in accordance with the terms and provisions of . . ."

It is noted that the legislative acts referred to in Section 4 (c) pertain exclusively to the operation of all types of public carriers in and upon the public highways. It has been urged that the Legislature by expressly designating those instances in which a "turnpike project" shall be deemed a public highway has by implication precluded such projects from being deemed public highways for all other purposes. This reasoning is based upon the legal maxim Expressio unius est exclusio alterius, which means: the expression of one thing is exclusive of another. However, like most legal maxims, the application of the foregoing maxim is made dependent upon the circumstances of each case. The rule is only applied, under certain conditions, to enable a court to determine the intention of the Legislature, not otherwise manifest. Limitations on the application of the rule are stated by 39 Tex. Jur. 190, in the following terms:

" . . . the rule expressio unius is restricted by the legislative intention as disclosed by the entire act; it is not to be applied when application will not aid the court in ascertaining and giving effect to the legislative intent. In such case the expression of one or more things is not an exclusion or negation of other things. Thus it has been decided that a statute enumerating some of the things to be done by a commission is not an implied denial of authority to do anything else, and that a recital of some of the ways in which waste occurs is not an exclusive definition of the only kinds of waste which the Legislature recognizes. . . ." (Emphasis added).

We think it clear that the application of the rule of expressio unius in the instant case would not effecutate legislative intent but, to the contrary, would serve to defeat such purpose as revealed by the Act as a whole. Section 23 of the Act provides:

"This Act, being necessary for the welfare of the State and its inhabitants, shall be liberally construed to effect the purposes thereof."

Section 22 of said Act provides:

"The foregoing sections of this Act shall be deemed to provide an additional and alternative method for the doing of the things authorized thereby, and shall be regarded as supplemental and additional to powers conferred by other laws, and shall not be regarded as in derogation of any powers now existing; . . ." (Emphasis added).

As the Supreme Court of Texas stated in the case of Texas Turnpike Authority v. Shepperd, supra, the Dallas-Fort Worth Turnpike when completed will, in effect, be a part of the highway system of this state. In view of the evident purposes of the Turnpike Act as revealed by the language thereof, we think that the Legislature has manifested a clear intent that the traffic laws mentioned by your inquiry should apply to the Dallas-Fort Worth Turnpike. A contrary construction would mean that an agency of the State had been authorized to construct and maintain an essential link in our State Highway System without necessary police powers for effective traffic control.

Each of your three questions are accordingly answered in the affirmative.

## SUMMARY

The Dallas-Fort Worth Turnpike is a public highway, and vehicular traffic thereon is governed by: The Uniform Act Regulating Traffic on Highways (Article 6701d, Vernon's Civil Statutes; the laws

relating to driving while intoxicated
(Article 802, Vernon's Penal Code), and
the speed laws of Texas (Article 827a,
Section 8, Subsection 1, Vernon's Penal
Code).

Yours very truly,

WILL WILSON
Attorney General of Texas

By *Leonard Passmore*

Leonard Passmore
Assistant

LP:jl:pf

APPROVED:

OPINION COMMITTEE

Geo. P. Blackburn, Chairman

James H. Rogers

Arthur Sandlin

Wayland C. Rivers, Jr.

REVIEWED FOR THE ATTORNEY GENERAL

By:   James N. Ludlum.