**AREA INTERSTATE TRUCKING, INC.,** Indiana Material Transfer, Inc., Advance Transportation Company, Bryan Truck Line, Inc., Churchill Truck Lines, Inc., Franks & Son, Inc., Great American Lines, Inc., Kat, Inc., and Mogle Enterprises, Inc., Petitioners,

v.

**INDIANA DEPARTMENT OF REVENUE** and John R. Gildea, as Commissioner of the Indiana Department of Revenue, Respondents,

No. 49T10–9105–TA–00022.

Tax Court of Indiana.

Dec. 29, 1992.

James H. Hanson, Michael J. Tosick, Scopelitis, Garvin, Light & Hanson, Indianapolis, for petitioners.

Richard A. Huser, Kevin Charles Murray, Locke, Reynolds, Boyd & Weisell, Indianapolis, for respondents.

FISHER, Judge.

The Petitioners, Area Interstate Trucking, Inc., Indiana Material Transfer, Inc., Advance Transportation Company, Bryan Truck Line, Inc., Churchill Truck Lines, Inc., Franks & Son, Inc., Great American Lines, Inc., KAT, Inc., and Mogle Enterprises, Inc., appeal the imposition of the tax and surtax (collectively motor carrier fuel tax) under IND.CODE 6–6–4.1. This matter is before the court on the Petitioners' motions for summary judgment and the Respondents' cross motion for summary judgment. The Petitioners seek injunctive relief pursuant to count one of their petition for injunction and original tax appeal.

## FACTS

The parties stipulated the following pertinent facts:

A. Petitioners operate motor vehicle equipment that qualifies as 'commercial motor vehicles' subject to the motor carrier fuel tax, and[ ] because those commercial motor vehicles consume fuel in their operation upon Indiana highways, Petitioners are subject to and pay the motor carrier fuel tax to Respondent, the Indiana Department of Revenue ('Department').

B. The commercial motor vehicles operated by Petitioners operate, in part, along the Indiana toll Road.

C. Petitioners calculate, report, and pay their motor carrier fuel tax liability on a quarterly basis. In so doing, Petitioners are required to calculate the amount of taxable fuel based on the mileage their commercial motor vehicles operate upon Indiana 'highways.'

D. The Department requires Petitioners to include within their calculation of 'highway' miles those miles operated by Petitioners' commercial motor vehicles on the Indiana toll road. Thus, Petitioners have been required to pay motor carrier fuel tax upon fuel consumed on the Indiana toll road and have in fact paid such tax. . . .

*Stipulation for Summary Judgment Purposes, Exhibit A.*

## ISSUES

The parties' cross motions for summary judgment raise the following issues:

I. Whether the Indiana toll road is a "highway" as defined under IND.CODE 6–6–4.1–1(f) for purposes of the motor carrier fuel tax? [1]

II. Whether imposition of the motor carrier fuel tax upon fuel consumed in operating on the Indiana toll road is constitutional? [2]

## STANDARD OF REVIEW

Summary judgment may be granted if no genuine issue of material fact exists and a party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). "Cross motions for summary judgment do not alter the standard for granting summary judgment." *Caylor–Nickel Clinic, P.C. v. Indiana Dep't of State Revenue* (1991), Ind.Tax, 569 N.E.2d 765, 766, *aff'd*, (1992), Ind., 587 N.E.2d 1311. As the parties agree, there are no genuine issues of material fact that prevent the court from deciding whether judgment may be granted as a matter of law.

## DISCUSSION & DECISION

### I.

■ Indiana imposes a motor carrier fuel tax "on the consumption of motor fuel by a

---

1. IC 6–6–4.1–1(e) prior to January 1, 1990.

2. Additionally, the Respondents contend issue preclusion prevents the Petitioners from asserting their claims in the case at bar. The court notes that issue preclusion applies only "where the party seeking estoppel can show: 1) a final judgment on the merits in a court of competent jurisdiction; 2) identity of the issues; and 3) the party to be estopped was a party or the privy of a party in the prior action." *Tofany v. NBS Imaging Sys., Inc.* (1992), Ind.App., 597 N.E.2d 23, 26–27 (quoting *White v. Allstate Ins. Co.* (1992), Ind.App., 591 N.E.2d 586, 589, 592). In *Area Interstate Trucking, Inc. v. Indiana Department of State Revenue* (1991), Ind.App., 574 N.E.2d 311, *trans. denied*, some, but not all of the Petitioners attempted to intervene in a class action of motor carriers consuming fuel in operating auxiliary equipment. These Petitioners sought recognition as a subclass of operators that consumes motor fuel on the Indiana toll road. In determining those Petitioners were not entitled to intervene, the court of appeals addressed whether the Indiana toll road is a "highway" for purposes of the motor carrier fuel tax. The court of appeals did not, however, expressly resolve the constitutional issues raised in the case at bar.

In addition, "[i]ssue preclusion [will] not bar the relitigation of an issue unless it was shown that the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue previously." *City of Gary v. Allstate Ins. Co.* (1992), Ind.App., 598 N.E.2d 625, 626 (citing *White*, 591 N.E.2d at 590). "To estop a party who has not been afforded a chance to present evidence and arguments on an issue would offend principles of due process." *Id.* (citing *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation* (1971), 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788, 800).

carrier in its operations on highways in Indiana." IND.CODE 6–6–4.1–4(a); IND. CODE 6–6–4.1–4.5(a). For purposes of the motor carrier fuel tax, the term " *'[h]igh- way' means the entire width between the boundary lines of every publicly main- tained way that is open in any part to the use of the public for purposes of ve- hicular travel.*" IC 6–6–4.1–1(f) (emphasis added). The Petitioners contend they are not subject to the motor carrier fuel tax for fuel consumed in operations on the Indiana toll road because a toll road is not a "high- way" as defined in IC 6–6–4.1–1(f).

" 'Statutes which impose or levy taxes may not be extended beyond the clear im- port of the language of the statute. Such statutes are to be construed strictly against the state and in favor of the tax- payer.' " *Area Interstate Trucking, Inc.,* 574 N.E.2d at 314 (quoting *Wechter v. Indiana Dep't of State Revenue* (1989), Ind.Tax, 544 N.E.2d 221, 224, *aff'd,* (1990), Ind., 553 N.E.2d 844). The question, there- fore, is whether the clear import of the definition of the term "highway" in IC 6–6– 4.1–1(f) includes the Indiana toll road.

Because it is necessary to pay a toll to gain access to the Indiana toll road, the Petitioners assert it is not "open." The Petitioners point to a dictionary definition of the term "open" that supports their con- struction: "Affording unobstructed en- trance and exit.... Affording unobstruct- ed passage.... Accessible to all; unre- stricted.... Unhampered by restrictions." *Brief in Support of Petitioners' "High- way Definition" Claim* at 7 (quoting *The American Heritage Dictionary of the En- glish Language,* 920 (1975)). Accordingly, the Petitioners contend that a strict con- struction of the term "open" within the definition of "highway" in IC 6–6–4.1–1(f) requires the exclusion of the Indiana toll road.

■ Such a narrow reading of the term "open" does not comport with the context of IC 6–6–4.1–1(f) as a whole. The intent of the legislature in drafting a statute can- not be determined from viewing words on a selective basis out of context from the re- mainder of the statute. *In re Estate of*

*Cassner* (1975), 163 Ind.App. 588, 592–93, 325 N.E.2d 487, 490. Rather, words in a statute must be construed with reference to other words used therein, and with which they are associated. *Indiana Creo- soting Co. v. McNutt* (1936), 210 Ind. 656, 667, 5 N.E.2d 310, 314. "[I]n interpreting a statute [courts] give the words used their ordinary and common meaning rather than 'overemphasizing a strict literal or selective reading of individual words.' " *Area Inter- state Trucking, Inc.,* 574 N.E.2d at 314 (quoting *Spaulding v. International Bak- ers Servs., Inc.* (1990), Ind., 550 N.E.2d 307, 309).

■ Therefore, the court must construe the term "open" in IC 6–6–4.1–1(f) in the context of the phrase "open in any part for the use of the public for purposes of vehic- ular travel." This phrase leaves the unmis- takable impression that the legislature in- tended the term "open" to distinguish be- tween public and private roads. "The fact that [people] are required to pay toll[s] for its use does not affect the question in the slightest degree. Turnpikes are public highways, notwithstanding the exaction of toll[s] for passing on them." *County Comm'rs v. Chandler* (1878), 96 U.S. 205, 208, 24 L.Ed. 625, 626. If the payment of a toll rendered the Indiana toll road not "open in any part to the use of the public," facilities such as state parks, city zoos, and public museums would also be considered not "open in any part to the use of the public" if admission were charged. The Indiana Court of Appeals rejected the prop- osition that the Indiana toll road is not "open" within the meaning of IC 6–6–4.1– 1(f), *Area Interstate Trucking, Inc.,* 574 N.E.2d at 314, and this court follows suit.

The Petitioners further contend that the statutory schemes for the management and funding of Indiana's roads provide evidence that the legislature did not intend for the motor carrier fuel tax to apply to the con- sumption of fuel used in operating on the Indiana toll road. In ascertaining the legis- lative intent, " 'statutes relating to the same general subject matter are *in pari materia* and should be construed together so as to produce a harmonious statutory

scheme.'" *Herff Jones, Inc. v. State Bd. of Tax Comm'rs* (1987), Ind.Tax, 512 N.E.2d 485, 490 (quoting *Sanders v. State* (1984), Ind., 466 N.E.2d 424, 428).

The parties agree the statutes distributing the revenues from the motor carrier fuel tax do not provide funding for the Indiana toll road.[3] Moreover, the management of the Indiana toll road is separate from other public roads in the state.[4] The court, however, finds that subjecting Indiana toll road users to the motor carrier fuel tax does not conflict with the function of the motor carrier fuel tax statutes and therefore is not inharmonious with these statutes. Moreover, though the Indiana toll road is separately managed and funded from other public roads in the state, the imposition of the motor carrier fuel tax on Indiana toll road users will not compromise the statutory scheme for separate management and funding of the Indiana toll road.

In addition, IND.CODE 8–23–7–23 provides that with the approval of the governor and the TFA, INDOT may "determine that any state highway should become a toll road." The Petitioners assert IC 8–23–7–23 indicates that a toll road cannot be a highway. Although IC 8–23–7–23 distinguishes highways from toll roads, the statute does not foreclose the possibility that a toll road can be a highway. All squares are rectangles, but not all rectangles are squares.

Accordingly, this court, as did the Indiana Court of Appeals in *Area Interstate Trucking, Inc.*, 574 N.E.2d at 314,

holds that the Indiana toll road is a "highway" as defined in IC 6–6–4.1–1(f).

## II.

■ The Petitioners contend the imposition of the motor carrier fuel tax on Indiana toll road users violates their due process and equal protection guarantees under the Fourteenth Amendment to the United States Constitution and Article 1, § 23 of the Indiana Constitution. "It is well established that the rights intended to be protected under both constitutional provisions are identical." *Haas v. South Bend Community School Corp.* (1972), 259 Ind. 515, 526, 289 N.E.2d 495, 501. *See also Sidle v. Majors* (1976), 264 Ind. 206, 210, 341 N.E.2d 763, 767. Generally, if neither a fundamental right nor a suspect class is involved, to pass equal protection muster statutes must meet a rational basis[5] test:

[T]here is a point beyond which the State cannot go without violating the Equal Protection Clause. The State must proceed upon a rational basis and may not resort to a classification that is palpably arbitrary. The rule often has been stated to be that the classification 'must rest upon some ground of difference having a fair and substantial relation to the object of the legislation.'

*Championship Wrestling, Inc. v. State Boxing Comm'n* (1985), Ind.App., 477 N.E.2d 302, 305, *trans. denied* (quoting *Allied Stores of Ohio, Inc. v. Bowers* (1959), 358 U.S. 522, 527, 79 S.Ct. 437, 441, 3 L.Ed.2d 480, 485). *See also Sidle*, 264

---

**3.** The revenues from the motor carrier fuel tax flow into three funds (the state highway fund, the motor vehicle highway account, and the motor carrier regulation fund) that provide resources for state and local roads. *See* IND. CODE 6–6–4.1–5. The Indiana toll road, however, is funded exclusively through revenue bonds and tolls. *See* IND.CODE 8–15–2.

**4.** The Transportation Finance Authority (TFA) is responsible for the management of the Indiana toll road. IND.CODE 8–9.5–8–4(a). The TFA is distinct from the Indiana Department of Transportation (INDOT), which is generally responsible for the management of the state's highways. INDOT may, however, manage the Indiana toll road pursuant to statutorily authorized contracts or leases with the TFA, but

such management functions must be separated from other INDOT functions. IND.CODE 8–9.5–8–6(c)(4).

**5.** Although the Petitioners do not specify whether procedural or substantive due process is at issue, they assert their due process argument is subsumed in their equal protection argument, an apparent reference to substantive due process. As in the Petitioners' equal protection argument, where the rules challenged involve no regulation directed at a suspect class or toward a fundamental right, a rational basis inquiry is used to determine whether rules conform with substantive due process. *See Indiana High School Athletic Ass'n, Inc. v. Schafer* (1992), Ind.App., 598 N.E.2d 540, 550–51.

Ind. at 210, 341 N.E.2d at 767. Statutes enjoy a strong presumption of constitutionality. *Id.* (citing *Taxpayers Lobby of Ind., Inc. v. Orr* (1974), 262 Ind. 92, 311 N.E.2d 814). Moreover, "[t]he burden is on the challenger to clearly demonstrate the statute's invalidity, and all doubts are resolved in favor of the statute." *Id.*

The motor carrier fuel tax is calculated by multiplying the appropriate rate of tax [6] by the number of gallons of fuel consumed by a motor carrier in its operations on Indiana highways. For purposes of the motor carrier fuel tax, the amount of fuel consumed in operations on Indiana highways is:

$$\text{Total amount of motor fuel consumed in its entire operations within and without Indiana} \times \frac{\text{Total number of miles traveled on highways in Indiana}}{\text{Total number of miles traveled within and without Indiana}}$$

IC 6–6–4.1–4(b); IC 6–6–4.1–4.5(b); *see also* 45 I.A.C. 13–4–5; 45 I.A.C. 13–8.5–2. By rearranging the foregoing formula (placing the denominator of the fraction beneath the total amount of motor fuel consumed) it can be seen for what it really is: an *in toto* gallons per mile figure multiplied by the miles traveled on highways in Indiana. This formula measures the proportion of miles traveled on Indiana highways to off-highway miles and miles traveled outside Indiana and allocates overall fuel consumption accordingly.[7] In addition, because the motor carrier fuel tax is based on both fuel consumption and miles traveled, motor carriers are subject to varying tax liabilities per mile, depending upon the rate and manner of fuel consumption. *See, e.g.,* 45 I.A.C. 13–4–4 (fuel consumed in idling is

included in the total gallons of fuel consumed).

Not all fuel consumption by motor carriers is subject to the motor carrier fuel tax. The motor carrier fuel tax does not apply to the portion of fuel consumed in operating auxiliary equipment on vehicles having a common fuel reservoir used for both the locomotion of the vehicle along the highway and the operation of auxiliary equipment.[8] IC 6–6–4.1–4(d); IC 6–6–4.1–4.5(d). "Vehicles exclusively operated on private property and not engaged in highway transportation are not motor vehicles" for purposes of the motor carrier fuel tax. 45 I.A.C. 13–1–3(f). Fuel consumed in operating such vehicles is therefore not subject to the motor carrier fuel tax. Likewise, miles traveled on private property are not included in the miles traveled on Indiana highways in computing the amount of fuel consumption subject to the motor carrier fuel tax.

The Petitioners contend the motor carrier fuel tax is apportioned on the basis of the benefit of the use of roads supported by the tax and therefore should not apply to fuel consumed on the Indiana toll road.

[W]hen a state undertakes to levy local assessments apportioned to local benefits ... in that case, if it fails to conform to the standard of apportionment adopted, its action is arbitrary, *see Georgia Ry. & Elec. Co. v. Decatur* [ (1935) ], 295 U.S. 165, 170, 55 S.Ct. 701, 703, 79 L.Ed. 1365, because there is a denial of equal protection. *Road Improvement Dist. v. Missouri Pacific R. Co.* [1926], 274 U.S. 188, 191–194, 47 S.Ct. 563, 564, 565, 71 L.Ed.

---

6. IC 6–6–4.1–4 imposes tax at the same rate as the special fuel tax under IND.CODE 6–6–2.1, currently $0.16 per gallon. IND.CODE 6–6–2.1–201. The surtax under IC 6–6–4.1–4.5(a) is imposed at a rate of $0.11 per gallon. Accordingly, the total motor carrier fuel tax is $0.27 per gallon.

7. The apportionment of fuel consumption taxes to travel within a state ensures the protections afforded by the Commerce Clause of the United States Constitution. *See American Trucking Ass'n v. Scheiner* (1987), 483 U.S. 266, 297, 107 S.Ct. 2829, 2847, 97 L.Ed.2d 226 (discussing Pennsylvania fuel consumption tax).

8. 45 I.A.C. 13–4–7(a) provides that motor carriers subject to the tax under IC 6–6–4.1–4 are "entitled to a proportional use exemption" for fuel used in operating auxiliary equipment on certain vehicles. Subsection (b) of this regulation establishes presumptive proportional (percentage) use exemptions for several types of vehicles with common fuel reservoirs for both locomotion and auxiliary equipment, such as ready mix concrete trucks (30%), tank trucks (24%), and sanitation trucks (41%), *et cetera.* Similarly, 45 I.A.C. 13–8.5–4 provides that the surtax under IC 6–6–4.1–4.5 does not apply to fuel used to operate auxiliary equipment in or on vehicles described in 45 I.A.C. 13–4–7.

992; *cf. Georgia Ry. & Elec. Co. v. Decatur*, 297 U.S. 620, 56 S.Ct. 606, 80 L.Ed. 925.

*Carmichael v. Southern Coal & Coke Co.* (1937), 301 U.S. 495, 523, 57 S.Ct. 868, 879, 81 L.Ed. 1245, 1261, n. 15.

■ The motor carrier fuel tax is apportioned to overall fuel consumption attributed to miles traveled on Indiana highways, but the incident of taxation chosen by the legislature is not limited to fuel consumed on roads supported by the motor carrier fuel tax. As stated above, the incident of taxation that triggers the motor carrier fuel tax is "the consumption of motor fuel by a carrier in its operations on highways in Indiana." IC 6–6–4.1–4(a); IC 6–6–4.1–4.5(a). In sum, the motor carrier fuel tax is apportioned on the basis of the benefit of the use of Indiana's public roads, regardless of whether the roads are supported by the tax. It is axiomatic that a taxpayer cannot "resist the payment of [a] tax because it is not expended for purposes which are peculiarly beneficial to him," *Carmichael*, at 523, 57 S.Ct. at 879, 81 L.Ed. at 1261, and the state is not required to use the revenues generated by the motor carrier fuel tax from operations on the Indiana toll road for the benefit of the Indiana toll road and its patrons.

The Petitioners also claim the purpose of the motor carrier fuel tax is to charge motor carriers only for their use of roads supported by the tax. Because the Indiana toll road is not supported by the motor carrier fuel tax, the Petitioners contend they are similarly situated to consumers of fuel for auxiliary equipment, vehicles operated exclusively on private property, and vehicles operated out-of-state, none of which are subject to the tax.

The court does not share the Petitioners' narrow vision of the purpose behind the motor carrier fuel tax. In the court's view, the purpose of the motor carrier fuel tax is simply to charge motor carriers for the use of the public roads in Indiana. The Peti-

tioners acknowledge the tax under IC 6–6–4.1–4 is the functional compliment to the pump taxes under IND.CODE 6–6–1.1 and IC 6–6–2.1.[9] Through the tax under IC 6–6–4.1–4, motor carriers are prevented from purchasing fuel outside Indiana and then operating tax-free on the state's roads, that is, motor carriers are charged for their use of the state's roads.[10]

In light of the legislative purpose to ensure that motor carriers pay for their use of the state's roads, the distinctions between Indiana toll road users and consumers of fuel for vehicles operated exclusively on private property, for vehicles operated out-of-state, and for auxiliary equipment are plain enough. Indiana does not bear the same responsibility for the maintenance and regulation of private and out-of-state roads that it does for public roads within its borders. Likewise, fuel consumed in the operation of auxiliary equipment is not necessarily linked to the use of the state's highways.

It is well settled that the legislature has broad powers in the classification of taxpayers and the creation of taxes:

While the State is not at liberty to resort to a tax classification which is palpably arbitrary, any classification is valid provided it rests upon some ground of difference having a fair and substantial relation to the object of the legislation so that all persons similarly circumstanced are treated alike. *Miles v. Dep't of Treasury* (1935), 209 Ind. 172, 188, 199 N.E. 372, 380, *appeal dismissed* (1936), 298 U.S. 640, 56 S.Ct. 750, 80 L.Ed. 1372; *Lutz v. Arnold* (1935), 208 Ind. 480, 499, 193 N.E. 840, 847. Sufficient differences in the method of doing business may be justification for separate classification and differential tax treatment. *See, State Bd. of Tax Comm'rs v. Jackson* (1931), 283 U.S. 527, 537–543, 51 S.Ct. 540, 543–545 [75 L.Ed. 1248]; *Miles*, 209 Ind. at 190, 199 N.E. at 380.

**9.** Under IC 6–6–4.1–4(c), motor fuel upon which the pump taxes are paid is not included in the amount of fuel subject to the tax.

**10.** The Petitioners do not contend they should not pay the pump taxes for fuel ultimately consumed on the Indiana toll road.

*Sunshine Promotions, Inc. v. Ridlen* (1985), Ind.App., 483 N.E.2d 761, 766, *trans. denied.*

> Where the peculiar nature of the traffic enhances the wear and tear on the roads and augments the hazards to other traffic, thus imposing upon the State heavier financial burdens for highway maintenance and policing than other types of traffic which make general indiscriminate use, the compensation charged by the State can be correspondingly heavier. Likewise common carriers for hire, which make the highways their place of business, may properly be charged extra compensation for such use.

J. Hartman, FEDERAL LIMITATIONS ON STATE AND LOCAL TAXATION § 12:3 at 670 (1981) (footnotes omitted).

In essence, the Petitioners challenge the wisdom and equity of legislative classifications that result in their payment of the motor carrier fuel tax in addition to a toll in operations upon the Indiana toll road. The presumption of a statute's validity under rational basis scrutiny "operates despite the fact that, in practice, the law results in some inequality." *Sobieralski v. City of South Bend* (1985), Ind.App., 479 N.E.2d 98, 100, *trans. denied.* The court is mindful of the burden born by the Petitioners. Nevertheless, "in our role as guardian of the constitution, we are ... a court and not a 'supreme legislature.' We have no right to substitute our convictions as to the desirability or wisdom of legislation for those of our elected representatives." *Sidle*, 264 Ind. at 209, 341 N.E.2d at 766.

For the foregoing reasons, the court holds the motor carrier fuel tax, as applied to the consumption of fuel by motor carriers in operating on the Indiana toll road, offends neither the United States nor the Indiana Constitutions.[11] The Petitioners' motions for summary judgment are HEREBY OVERRULED AND DENIED, and the Respondents' cross motion for summary judgment is HEREBY GRANTED.

11. The Petitioners have asked the court to answer three questions to explain why the their constitutional arguments fail:

QUESTION 1: Is the motor carrier fuel tax a proportional tax?
ANSWER: Yes.
QUESTION 2: Assuming it is a proportional tax, what is the classification pursuant to which the tax is apportioned among taxpayers that pay the tax?
ANSWER: The motor carrier fuel tax is imposed "on the consumption of motor fuel by a carrier in its operations on highways in Indiana." IC 6–6–4.1–4(a); IC 6–6–4.1–4.5(a).
QUESTION 3: What is the fair and substantial relationship that exists between the classification and the purpose for the motor carrier fuel tax?
ANSWER: Taxation of a motor carrier's fuel consumption that is allocated to miles traveled on Indiana highways bears an exceedingly rational connection with the purpose of the motor carrier fuel tax, that is, to charge motor carriers for their use of the state's highways.