WABASH, INC., Petitioner,

v.

DEPARTMENT OF STATE
REVENUE, Respondent.

No. 49T10–9603–TA–27.

Tax Court of Indiana.

June 1, 2000.

Larry J. Stroble, Barnes & Thornburg, Indianapolis, Indiana, Attorney for Petitioner.

Karen M. Freeman–Wilson, Attorney General of Indiana, Indianapolis, Indiana, Attorney for Respondent.

FISHER, J.

■ The petitioner, Wabash Inc. (Wabash) appeals from a final determination of the Department of State Revenue (Department), finding that Wabash erroneously included Wabash's parent company, Kearney–National Inc. (KN), on its consolidated tax return for the 1990 tax year. In its original tax appeal, Wabash disagrees with the Department's final determination and asks this Court to reverse it. The Department also raises an additional issue: whether the apportionment method used by Wabash to calculate its taxes was correct.[1] For the reasons explained below, the Court finds in favor of Wabash on both issues and reverses the Department's final determination.

## FACTS AND PROCEDURAL HISTORY

Wabash is a manufacturing corporation located in Wabash, Indiana. Wabash is also a wholly-owned subsidiary of Kearney–National Holdings II (KNH II), a Delaware corporation doing business in Indiana. In turn, KNH II is a wholly-owned subsidiary of Kearney–National Holdings (KNH), a Delaware holding company of KN that possessed no Indiana connections. The above-named companies were all contained under the corporate umbrella of KN, which is headquartered in White Plains, New York.

In 1989, KN considered the acquisition of the Coto Corporation (Coto), a competitor of KN's located in Rhode Island. In furtherance of this acquisition, KN selected Michael Carper (Carper), the general manager of Wabash, to participate in an acquisition study in the fall of 1989 to examine the benefits that Coto could bring to KN. Following completion of the study, KN acquired Coto as of February 1, 1990. Following the merger, all of Wabash's operations moved to Coto's plant in Rhode Island. KN engaged Carper to coordinate the move of Wabash's plant, personnel and machinery to Coto's plant in Rhode Island because of his involvement in the acquisition study. On January 1, 1990, Carper became a full-time employee of KN while working at the Wabash plant until his vol-

---

1. This issue was raised by the Department after the filing of the instant case; nonetheless, the Court possesses jurisdiction to decide it. *See* IND.CODE ANN. § 6–8.1–5–1(h) (West 2000) (stating that the Court shall hear appeals from the Department de novo).

untary departure in July or August of 1990.[2]

Thereafter, Wabash filed its Indiana adjusted gross income and supplemental net income tax return for the 1990 tax year as a consolidated return (return).[3] *See* IND. CODE ANN. § 6–3–4–14 (West 1989). The return listed Wabash, KNH II, KNH and KN as corporations.[4] Following an audit of Wabash, the Department subsequently issued a proposed notice of assessment on March 4, 1994, which determined that KN had erroneously been included in Wabash's 1990 tax return. Wabash appealed this ruling, which the Department upheld in a letter of finding on January 29, 1996. (Pet'r Ex. 4.) Wabash then filed this original tax appeal on March 26, 1996. The Court held a trial in this matter on April 23, 1997 and oral arguments from both parties were heard on October 22, 1997. Additional facts will be supplied where necessary.

## ANALYSIS AND OPINION

### Standard of Review

◼ The Court reviews findings of the Department de novo and is bound by neither the evidence nor the issues raised at the administrative level. *See* IND.CODE ANN. § 6–8.1–5–1(h) (West 2000); *see also Uniden America Corp. v. Department of*

**2.** The Department places some emphasis on the fact that Wabash's taxable year ended on January 31, 1990. (Resp't Br. at 17–19.) Thus, the State Board argues, KN only employed Carper for 31 days during the 1990 tax year. However, the length of employment is not dispositive in such instances. Rather, minimum contacts with the taxing state are what matter for tax purposes. *See Hunt Corp. v. Department of State Revenue*, 709 N.E.2d 766, 768 (Ind. Tax Ct.1999). As a result, the Court will not consider this argument.

**3.** KN suffered a loss for the 1990 tax year, which enabled Wabash to decrease its taxes when it included this loss on its return.

**4.** Despite the fact that KNH has no Indiana connections, the Department did not dispute its inclusion in Wabash's 1990 tax return.

*State Revenue,* 718 N.E.2d 821, 824 (Ind. Tax Ct.1999).

## Discussion

### I. Inclusion

◼ Wabash contends that Carper's activities on behalf of itself and KN were enough to generate Indiana-sourced income, thus allowing KN's inclusion on Wabash's 1990 return. The Department argues, however, that Carper's activities were not substantial enough to generate sufficient Indiana-sourced income that would permit KN's inclusion.[5] IND.CODE ANN. § 6–3–4–14 (West 2000) states that several companies may file a consolidated return as long as each company has adjusted gross income derived from Indiana sources. IND.CODE ANN. § 6–3–2–2 (West 2000) lists the Indiana sources from which Indiana-sourced income can be derived. Among the enumerated sources are:

1. Income from real or tangible personal property located in Indiana;

2. Income from doing business in Indiana;

3. Income from a trade or profession conducted in Indiana;

4. Compensation for labor or services rendered within Indiana; and

5. Income from stocks and bonds and other intangible personal property

**5.** At trial, the Department made a number of relevancy objections to some of Wabash's exhibits. Relevancy is defined by the Indiana Rules of Evidence as evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." IND. R. EVID. 401. Relevant evidence is generally admissible. *See Robinson v. State,* 720 N.E.2d 1269, 1271 (Ind.Ct.App.1999). After taking the objections under advisement, the Court finds the exhibits relevant to the case at hand and thus OVERRULES the Department's objections.

having receipts attributable to Indiana.

*See id.*

Wabash argues that KN meets the "doing business" factor because Carper's activities in Indiana were more than minimal. While the Indiana Code does not define "doing business," IND. ADMIN. CODE tit. 45, r. 3.1–1–38 (1988)(codified in present form at *id.* (1996)) defines the phrase as:

1. Maintenance of an office or other place of business in the state;

2. Maintenance of an inventory of merchandise or material for sale distribution, or manufacture, or consigned goods;

3. Sale or distribution of merchandise to customers in the state directly from company-owned or operated vehicles where title to the goods passes at the time of sale or distribution;

4. Rendering services to customers in the state;

5. Ownership, rental or operation of a business or of property (real or personal) in the state;

6. Acceptance of orders in the state; [and]

7. Any other act in such state which exceeds the mere solicitation of orders so as to give the state nexus under P.L. 86–272 to tax its net income.

Wabash argues that KN qualifies under IND. ADMIN. CODE tit. 45 r. 3.1–1–38(7) because Carper's activities on behalf of KN were more than minimal. (Pet'r Reply Br. at 10, 14.) 15 U.S.C. §§ 381–384 (1999) (P.L. 86–272) deals with a state subjecting a foreign corporation to taxation. In particular, section 381(a) states:

No state, or political subdivision thereof, shall have power to impose, for any taxable year ending after September 14, 1959, a net income tax on the income derived within such State by any person from interstate commerce if the only business activities within such State by or on behalf of such person during such taxable year are either, or both, of the following:

(1) the solicitation of orders by such person, or his representative, in such State for sales of tangible personal property, which orders are sent outside the State for approval or rejection, and, if approved, are filled by shipment or delivery from a point outside the State; and

(2) the solicitation of orders by such person, or his representative, in such State in the name of or for the benefit of a prospective customer of such person, if orders by such customer to such person to enable such customer to fill orders resulting from such solicitation are orders described in paragraph (1).

Section 381(a) thus exempts foreign corporations from tax where those companies only engage in the mere solicitation of sales. The United States Supreme Court in *Wisconsin Department of Revenue v. William Wrigley Jr.*, 505 U.S. 214, 228–29, 112 S.Ct. 2447, 2456–57, 120 L.Ed.2d 174 (1992) held that P.L. 86–272 only protects the actual solicitation of orders, as well as other activities that serve no independent business function apart from their connection to the solicitation of orders. In *Wrigley*, Wisconsin sought to tax the Wrigley company for various activities it conducted inside the state related to its chewing gum business. The activities in question, among other things, consisted of the exchange of fresh gum for stale gum, the storing of gum inside Wisconsin and the supplying of gum through agency stock checks. The Court found that P.L. 86–272 contains a de minimis exception if an activity is trivial in nature. *See William Wrigley Jr.*, 505 U.S. at 231–32, 112 S.Ct. at 2458, 120 L.Ed.2d 174. The Court also stated that a company will lose the protection of P.L. 86–272 if it performs an activity that establishes a nontrivial additional connection with the taxing state. *See id.*,

505 U.S. at 232, 112 S.Ct. at 2458, 120 L.Ed.2d 174. `Despite the fact that Wrigley's Wisconsin sales only accounted for a small percentage of its total sales, the Court found that Wrigley's activities established a nontrivial additional connection with Wisconsin. *See id.,* 505 U.S. at 235, 112 S.Ct. at 2460, 120 L.Ed.2d 174. The Indiana Supreme Court has stated that particular emphasis should be placed upon the totality of the business activities of a company within Indiana when interpreting P.L. 86–272. *See Department of Revenue v. Kimberly–Clark Corp.,* 275 Ind. 378, 416 N.E.2d 1264, 1268 (1981).

In examining the business activities of Wabash, it is helpful to consider how other courts have interpreted P.L. 86–272 as well. In *Magnetek Controls, Inc. v. Department of Treasury,* 221 Mich.App. 400, 562 N.W.2d 219, 224 (1997), the Michigan Court of Appeals held that the taxpayer exceeded the scope of P.L. 86–272's protection by sending sales managers into Michigan for 10–14 days per year. Similarly, in *Brown Group Retail, Inc. v. Franchise Tax Board,* 44 Cal.App.4th 823, 836, 52 Cal.Rptr.2d 202, 209 (Cal.Ct.App.1996), the California Court of Appeal held that P.L. 86–272's exception did not apply to a taxpayer who sent two of its employees to help customers with their businesses. In addition to these two courts, the Department has held that a taxpayer did business in Indiana where it sent its employees once or twice a year into the state in order to deliver newspapers. *See* Rul. IT96–03 (Jan. 7, 1997) (Pet'r Ex. 26.)

■ In this case, the Department argues that Carper's activities on behalf of KN did not extend beyond the solicitation exception listed in P.L. 86–272.[6] Carper's responsibilities during the acquisition of Coto included coordinating the move of Wabash's equipment to Rhode Island, coordinating inventory levels between Wabash and Coto's plants and advising both

companies' salesmen and customers about the planned consolidation. (Trial Tr. at 22.) At trial, KN's Chief Financial Officer John F. Tierney, Jr. explained that Carper's expertise was important to ensure that consolidation went smoothly: "You've got a lot of risk and you have to make sure you do it the right way or you can bring both companies to their knees. So, [Carper] ... was the best guy to do that." (Trial Tr. at 56.)

This Court finds that KN's Indiana activities rose above mere solicitation under P.L. 86–272. The Court finds that KN did business in Indiana as defined by IND. ADMIN. CODE tit. 45, r. 3.1–1–38(7). Since it generated $2 million worth of sales attributable to Indiana, KN had Indiana-sourced income under IND.CODE ANN. § 6–3–2–2. Since KN had Indiana-sourced income, it was properly includible in Wabash's return under IND.CODE ANN. § 6–3–4–14. The Court reverses the Department's final determination on this issue.

## II. Apportionment Formula

■ The Department next asks this Court to determine whether the apportionment formula used by Wabash to calculate its taxes was correct. Having raised this issue, the Department bears the burden of proving that Wabash's Indiana income does not fairly reflect Indiana-sourced income. *See Exxon Corp. v. Wisconsin Dept. of Revenue,* 447 U.S. 207, 219–20, 100 S.Ct. 2109, 2118, 65 L.Ed.2d 66 (1980) (determining that the tax cannot be out of proportion to the business transacted by the appellant in that state); *see also Hunt,* 709 N.E.2d at 772. (concluding that apportionment formula can be used unless it does not fairly reflect Indiana income)(citing section 6–3–2–2(1)). The Department argues that Wabash's calculations lead to a disproportionate amount of Indiana-sourced income.

---

6. Normally, the Department, not the petitioner argues in such cases that the petitioner's activities exceeded the solicitation exception

noted in P.L. 86–272. *See West Publ'g Co. v. Department of State Revenue,* 524 N.E.2d 1329, 1336 (Ind. Tax Ct.1988).

As provided by IND.CODE ANN. § 6–3–2–2(b) (West 2000), the standard apportionment formula multiplies a company's business income by the total of its property, payroll and sales factors divided by three to determine the tax (standard formula). *See also* IND. ADMIN. CODE tit. 45, r. 3.1–1–39 (1988) (codified in present form at *id.* (1996)) (describing the standard formula). However, if the stated method fails to fairly represent Indiana source income, IND. ADMIN. CODE tit. 45, r. 3.1–1–39 also authorizes the Department or the taxpayer (upon obtaining a ruling from the Department) to use another method that effectuates a more equitable allocation and apportionment of a taxpayer's income. *See also* IND.CODE ANN. § 6–3–2–2.

The Department advocates using a stacked method to compute Wabash's taxes. Under this method, KN's return would be computed separately from the rest of the companies listed in Wabash's return by specifically applying the standard formula to each company. (Trial Tr. at 21.) That figure would then be stacked on top of the taxes computed by using the standard formula applied to the other companies' consolidated returns to arrive at the taxable income for Wabash. (Trial Tr. at 21.)

■ The U.S. Supreme Court, this Court and the Department have all recognized that the standard method is the method often used by related corporations to compute their state income taxes. In *Container Corp. of America v. Franchise Tax Board,* 463 U.S. 159, 170, 103 S.Ct. 2933, 2943, 77 L.Ed.2d 545 (1983) the United States Supreme Court not only affirmed the standard formula but also stated that it has become a benchmark against which other apportionment formulas are judged. The Supreme Court further stated that the standard formula gained wide approval because the property, payroll and sales factors reflect a large share of the activities by which value is generated. *See id.,* 463 U.S. at 183, 103 S.Ct. at 2949, 77 L.Ed.2d 545. Thus, the standard formula

may be used unless the Department proves that the income attributed to Indiana from using that formula is out of proportion to the business transacted in Indiana. *See id.,* 463 U.S. at 170, 103 S.Ct. at 2942, 77 L.Ed.2d 545.

This Court has also recognized Indiana's reliance on the standard formula. *See Sherwin–Williams Co. v. Department of State Revenue,* 673 N.E.2d 849, 851 (Ind. Tax Ct.1996) (stating that Indiana has adopted standard formula); *see also Hunt,* 709 N.E.2d at 771 n. 12 (stating that the three-factor formula has been approved by the U.S. Supreme Court) (citing *Container Corp.,* 463 U.S. at 170, 103 S.Ct. at 2943, 77 L.Ed.2d 545.)

■ The Department has acknowledged that the standard formula is the most accepted and recognized method of computing a company's taxes. (Pet'r Ex. 50.) *See* IND. ADMIN. CODE tit. 45, r. 3.1–37,–45 (1996) (stating that the Department will depart from the standard formula only if the use of such formula works a hardship or injustice upon the taxpayer, results in an arbitrary division of income, or in other respects does not fairly attribute income to Indiana). The Court should give great weight to the Department's longstanding interpretation of its own regulation unless this interpretation would be inconsistent with the regulation itself. *See Department of State Revenue v. Bulkmatic Transport. Co.,* 648 N.E.2d 1156, 1158 (Ind.1995).

The Department has reiterated its preference for the standard method in a series of revenue rulings where the taxpayer sought to use the stacked method. *See* Rul. 81–4381 GIT (May 29, 1981) (Pet'r Ex. 52) ("The Indiana Department of Revenue has consistently required that a consolidated return use a combined three-factor apportionment formula as the fairest method of reflecting the income derived from Indiana sources."); Rul. 84–6943 ITC (October 3, 1986) (Pet'r Ex. 45) ("The basic premise behind a consolidated income tax return is that the group is

treated as a single corporation ... [A] combined three-factor formula is employed to fairly reflect the income derived from Indiana sources."); *see also* Rul. 90–0114 ITC (November 13, 1990) (Pet'r Ex. 46) ("The Indiana Department of Revenue forms [ ] do not provide for the calculation of income as described by the taxpayer. . . . There are no provisions for separate calculations with a single consolidation to determine Indiana taxable income.") (emphasis in original).

 The spirit and intent of a consolidated adjusted gross income tax return is to treat an affiliated group as a single taxpayer. *Cf. Associated Ins. Cos., v. Department of State Revenue*, 655 N.E.2d 1271, 1274–75 (Ind. Tax Ct.1995) *trans. denied.* Further, in a consolidated return the separate entities of the various member corporations are disregarded; the consolidated income of the entire group is reported on a single return and a single tax is paid on the total income. *See Chesapeake Industries, Inc. v. Comptroller of the Treasury*, 475 A.2d 1224, 1226 (Md. App.1984). Sufficient differences in the method of doing business may be justification for separate classification and differential tax treatment. *See Area Interstate Trucking, Inc. v. Department of State Rev-*

*enue*, 605 N.E.2d 272, 277–78 (Ind. Tax Ct.1992) *cert. denied*, 510 U.S. 864, 114 S.Ct. 183, 126 L.Ed.2d 142 (1993) (citing *Sunshine Promotions, Inc. v. Ridlen*, 483 N.E.2d 761, 766 (Ind.Ct.App.1985)) *trans. denied.* In this case, however, the Department has failed to show how the standard formula employed by Wabash for the 1990 tax year unfairly reflects Wabash's Indiana-sourced income. Thus, it was appropriate for Wabash to use the standard formula.

## CONCLUSION

For the aforementioned reasons, the Court finds that KN had sufficient Indiana-sourced income for the 1990 tax year to be included on Wabash's return. The Court further finds that the standard three-factor apportionment formula employed by Wabash on its 1990 return was correct. Thus, the Court now REVERSES the Department's final determination in this case.