## WEIL ET AL. *v.* STONE ET AL.

[No. 3,231.   Filed January 29, 1904.   Rehearing denied April 5, 1904. Transfer denied April 29, 1904.]

SALES.—*Severable Contract.—Breach.—Recovery of Purchase Price Paid.*—Where a contract for the sale of skins set out several distinct classes to be furnished, and apportioned the price to be paid for each class, the contract is a divisible one, and entitled the buyer to rescind the contract for fraud as to part of the items and recover the price paid therefor. *pp. 116, 117.*

SAME.—*Action to Rescind Contract.—Complaint.*—In an action to rescind for fraud a contract for the sale of goods, an averment in the complaint that the articles shipped were inferior to the quality specified in the contract, and were not marketable in the condition they were in when shipped by defendants and received by plaintiffs, was sufficient in the absence of a motion to make specific. *pp. 117, 118.*

SAME.—*Rescission of Contract.—Recovery of Purchase Price.*—In an action to rescind a contract of sale as to part of the articles sold and to recover the purchase price thereof, evidence as to the value of such articles was immaterial. *pp. 118, 119.*

TRIAL.—*Misconduct of Jury.—Affidavits of Jurors.—New Trial.*—The affidavits of three jurors that statements were made to the jury, by members of the panel, to the effect that defendants were Jews, and unworthy of be-belief, and that one of defendants' witnesses had attempted to defraud an insurance company by burning his own property, were not ground for a new trial, since a juror can not impeach his own verdict. *p. 119.*

From Allen Circuit Court; *C. W. Watkins*, Special Judge.

Action by Albert H. Stone and others against Isaac Weil and others. From a judgment for plaintiffs, defendants appeal. *Affirmed.*

*J. M. Barrett, S. L. Morris, B. K. Elliott, W. F. Elliott* and *F. L. Littleton*, for appellants.

*T. E. Ellison*, for appellees.

HENLEY, C. J.—Appellees in this case recovered a judgment against appellants growing out of the alleged violation of a certain written contract. The material averments of the second paragraph of the complaint upon which the cause was tried are that appellees are partners, doing business in the cities of Boston and New York, and engaged in buying and selling different kinds of skins, and that appellants are likewise engaged in the same business in the city of Ft. Wayne; that in the month of March, 1898, appellees were informed by appellants that they had an extra fine lot of sheepskins which they desired to sell, and, pursuant to such notice, one of appellees called on appellants at their place of business in Ft. Wayne, and appellees' representative went with appellants to where the sheepskins were stored, and found such skins done up in large packages of a dozen or more, containing about seven hundred dozen, all different grades and quality; that appellants exhibited samples of the various skins to appellees' agent, and then and there represented that all the skins proposed to be sold were what are known to the trade as "packers' skins" and "fine packers' skins;" that the term "packers' skins" is used to designate skins removed from animals in large slaughter houses, and are free from defects, and are cleaner and better cured, and can be worked into better leather than the skins which were known as "country skins."

It is further averred that appellees and appellants entered into a contract, a copy of which contract is made a part of the complaint, by which appellants agreed properly to pack and ship the skins to Boston, and stating the price which appellees were to pay for them; that while the negotiations were in progress, it was discovered that there

were not enough sheepskins to make a car load, and that thereupon appellants represented that they had about one hundred fifty dozen "A or No. 1" hogskins and about the same quantity of "B or No. 2" hogskins which were in process of tanning, and would soon be ready for delivery; that such hogskins were in large vats, covered with liquor, or piled on the floor undergoing the process of being prepared for the market; that the hogskins were in such condition that appellees could not make an examination of them, and, in order that appellees might know the character of the hogskins, appellants exhibited to them several samples; that the skins so exhibited were large, perfect skins, such as are known to the trade as "A or No. 1 skins;" that appellants agreed to prepare the hogskins so that they would conform in character to the samples exhibited, and appellees agreed to buy and pay therefor at the rate of $5.50 per dozen for No. 1 skins, and $3 per dozen for No. 2 skins; that appellants accepted said offer, and agreed to grade, pack, and ship the skins to Boston, subject to appellees' inspection and count.

It is further averred that under such contract various skins were shipped to appellees at Boston, and that before the same were received and examined appellees honored appellants' draft of $2,812.44; that a few days after the receipt of the draft, upon examination of the goods shipped, they were found to be defective, and not according to sample, and thereupon appellees offered to return all the property so shipped, but appellants refused to accept or permit the return of the goods. It is further alleged that the shipped skins were so packed that the immediate discovery of the defects was impossible, and that upon investigation afterward it was discovered that appellants had stuffed the interior of the casks in which the skins were shipped with inferior sheepskins, not conforming to the samples shown appellees, nor to the quality designated in the contract; that the money advanced to appellants by the pay-

ment of the draft aforesaid was procured by the fraud, deceit, and misconduct of appellants. It is further averred that the hogskins shipped were not sufficiently cured for their proper preservation; that they were not of the quality purchased or designated in the contract; that appellees refused to accept them, and immediately notified appellants of such fact, and demanded the repayment of the money advanced to them upon that account; that the hogskins were at once reshipped to appellants, and appellants refused to receive them; that the representations made by appellants in regard to the quality of the skins proposed to be shipped were falsely and fraudulently made, and that appellants knew when such representations were made that the same were false. It is also shown by the complaint that appellees retained the sheepskins and sold them. The following is a copy of the contract between appellants and appellees out of which this controversy arose: "Messrs. Stone, Timlow & Co., New York City. Gentlemen: We offer you as follows: The quantities are approximate, to be more or less, all F. O. B. Ft. Wayne, Indiana. 6 to 10 doz. XXXX sheep at $5 per doz., 25 to 35 doz. XXX sheep at $4.25 per doz., 25 doz. XX sheep at $3.50 per doz., 75 to 100 X sheep at $3 per doz., 20 to 30 doz. No. 1 sheep at $2.75 per doz., 150 to 175 doz. XXX ribby sheep at $2.37½ per doz., 15 to 25 doz. XX ribby sheep at $1.75 per doz., 6 to 10 doz. XXX blind ribby sheep at $3 per doz., 5 to 10 doz. broken grain sheep at $4 per doz., 40 to 50 doz. cull sheep at $1.25 per doz., 10 to 15 XX lambs at $3.25 per doz., 10 to 20 doz. X lambs at $2.50 per doz., 50 to 75 doz. No. 1 lambs at $2.37½ per doz., 30 to 50 doz. No. 2 lambs at $1.50 per doz., 75 to 100 doz. ribby lambs at $1.62½ per doz., 40 to 60 doz. cull lambs at 50c. per doz., 125 to 150 doz. A hogskins at $5.50 per doz., 125 to 150 doz. B hogskins at $3 per doz. Shipment to be made to Boston, Massachusetts, invoice and B. L. to be sent to 4 Warren St., New

York City. Terms, draft for ninety per cent., balance to be remitted upon receipt of the stock. Yours truly, The Ft. Wayne Sheepskin & Wool Co. A. Weil, Pres. Accepted: Stone, Timlow & Co. Per A. H. Stone."

Appellants' demurrer to the complaint was overruled, and the cause put at issue by appellants' general denial to the complaint. There was a trial by jury, and a verdict and judgment in favor of appellees in the sum of $1,183.55. With the general verdict the jury returned answers to interrogatories. The errors assigned and discussed relate to the action of the trial court in overruling appellants' demurrer to the complaint, in overruling their motion for a new trial, and in overruling their motion for judgment upon the special finding of facts notwithstanding the general verdict.

It is contended by counsel for appellants that this is an action to rescind a contract on the ground of fraud and deceit, and that the contract must be regarded as an entirety, and not severable; and that the complaint showing, as it does, that a part of the goods purchased under the contract were retained by appellees, and sold, renders the complaint insufficient; and that the complaint is insufficient for the further reason that the contract shows upon its face that the goods were delivered to appellees in Ft. Wayne, and that the inspection and the grading and the examination of the goods sold under the contract must, by the terms of the contract, be made at Ft. Wayne, and not at Boston. It is upon appellants' theory and contention that the complaint is one to rescind and recover back money paid that we will proceed to examine the question of its sufficiency.

If the contract must be regarded as indivisible, appellants' argument and objection to the complaint is well taken; but under the authorities we think the contract is one clearly severable. The contract in this case rests upon a consideration susceptible of distinct apportionment. It

consists of several distinct items to be furnished by one party, and the price to be paid by the other party is apportioned to each item. In 2 Parsons, Contracts (9th ed.), *517, it is said: "If the part to be performed by one party, consists of several distinct and separate items, and the price to be paid by the other is apportioned to each item to be performed, or is left to be implied by law, such a contract will generally be held to be severable." In *Higham* v. *Harris,* 108 Ind. 246, the court said: "Where, however, a contract is divisible, one part having no necessary relation to the other, each resting upon a consideration peculiar to itself, and independent of the other, the injured party may retain the subject of one part, and, having tendered the consideration or benefit received, may treat another part as rescinded at law, or he may maintain a suit in equity to rescind one part upon equitable terms, while adhering to another independent part." *Lucesco Oil Co.* v. *Brewer,* 66 Pa. St. 351. In *Kirkland* v. *Oates,* 25 Ala. 465, the court said: "A severable contract is one the consideration of which is, by its terms, susceptible of apportionment on either side, so as to correspond to the unascertained consideration on the other side." We think the cases cited state the rule of law correctly as applicable to contracts of the class to which the one in controversy here belongs, and place it squarely within the class of severable contracts.

The complaint, after averring specifically the defects in the hogskins shipped appellees under the contract, and that the quality shipped was inferior to the quality specified, avers, in substance, that the hogskins were not marketable in the condition they were in when so shipped by appellants and received by appellees. This averment, however imperfect it may be, was a sufficient averment that the quality of the goods shipped, at the time and place of their shipment, was inferior to the quality specified in the contract. If appellants desired a more specific averment upon this subject, their remedy was by motion to

make more specific, and not by demurrer. The averment was sufficient, under which evidence might have been admitted to prove the quality of the goods at the place of shipment. We think the complaint states a cause of action upon the theory on which appellants contend it proceeds. The same questions arise upon appellants' motion for judgment on the answers of the jury to the interrogatories as arise upon the complaint, and a further discussion is unnecessary. The evidence shows that the sale of the goods was by sample, and while, under the contract, the title to the property was in appellees in Ft. Wayne, the examination and delivery was to be in Boston, the place to which the goods were to be shipped, and this we think clearly appears from the contract itself.

The next question presented by counsel arises upon the action of the trial court in admitting certain evidence in regard to the value of the goods in Boston at the time they were received. Mr. Stone, one of the appellees, was permitted to answer the following question, propounded to him by counsel: "Mr. Stone, you may state what the value per dozen would be or was in Boston at the time those goods were received—the A hogskins of the character and quality that were shown to you by Mr. Weil." Appellants' objection to this question was that the market value of these goods in Boston was entirely immaterial, as the contract provided for their delivery in Ft. Wayne; and that the only evidence admissible to show the value of the goods would be evidence to prove the market value of the goods at the time they were delivered in Ft. Wayne, and that the difference between that value and the contract price would be the measure of damages. This action, regarded as an action to rescind a part of the contract, which is the theory upon which counsel for appellants insists the action proceeds, results in making evidence of the value of the property returned immaterial. The contract, in so far as it relates to the sale of the hogskins, was rescinded, and the

goods returned to the vendors at Ft. Wayne. The contract in that respect having been rescinded, and the goods returned, evidence as to the market value of the goods of the quality specified in the contract, either at Boston or Ft. Wayne, could not affect the result.

Another cause stated in appellants' motion for a new trial brings in question alleged misconduct on the part of the jury. Counsel insist that it was reversible error upon the part of the jurors in listening to comments made by members of the panel to the effect that appellants were Jews, and unworthy of belief, and that one of appellants' witnesses had attempted to defraud an insurance company by burning his own property. The affidavits of three of the jurors appear in the record in support of this reason. The Supreme Court has in numerous cases held that a juror can not impeach his own verdict. *Stanley* v. *Sutherland*, 54 Ind. 339; *Houk* v. *Allen*, 126 Ind. 568, 11 L. R. A. 706; *Barlow* v. *State*, 2 Blackf. 114.

It appears from the whole record that the case was fairly tried and determined.

Judgment affirmed.