**MEYER WASTE SYSTEMS, INC., an Indiana corporation d/b/a Able Disposal, Petitioner,**

v.

**INDIANA DEPARTMENT OF STATE REVENUE, Respondent.**

No. 45T10–9609–TA–124.

Tax Court of Indiana.

Dec. 7, 2000.

Steven W. Handlon, Handlon & Handlon, Portage, IN, Attorney for Petitioner.

Karen M. Freeman–Wilson, Attorney General of Indiana, Joel Schiff, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

Meyer Waste Systems, Inc. d/b/a Able Disposal (Meyer Waste) appeals the final determination by the Indiana Department of State Revenue (Department of Revenue) assessing it use tax for the calendar years 1990, 1991, and 1992 (tax years in question). In this original tax appeal Meyer Waste presents the following issue for this Court's review: whether, pursuant to IND.CODE ANN. Section 6-2.5-5-27 (West 2000), Meyer Waste is exempt from the use tax on its trucks and other items associated with its garbage hauling business.

## FACTS AND PROCEDURAL HISTORY

The undisputed facts follow. During the tax years in question, Meyer Waste was primarily in the business of transporting garbage. However, Meyer Waste also did some recycling business. Meyer Waste possessed a motor carrier permit issued by the Interstate Commerce Commission. Meyer Waste transported garbage generated by individual homeowners and tenants, commercial businesses, and governmental entities. Meyer Waste loaded the garbage onto its trucks, generally while the trucks were on public roadways, and drove the garbage to landfills via public roadways. In its business, Meyer Waste used and consumed tangible personal property that included garbage trucks, garbage loading and unloading equipment, replacement parts for trucks and loading equipment, and tools and machinery for repair and maintenance of said items.

Following an audit in 1995, the Department of Revenue issued a proposed assessment for 1990, 1991, and 1992 wherein it assessed use tax, penalties and interest that totaled $290,665.48. Thereafter, Meyer Waste protested the assessment and the Department of Revenue conducted a hearing thereon. In 1996, the Department of Revenue issued a letter of findings wherein it abated the penalties but affirmed the proposed assessments. In its findings, the Department of Revenue determined that Meyer Waste did not provide public transportation pursuant to IND.CODE Section 6-2.5-5-27 because it was carrying its own property. Therefore, the Department of Revenue concluded that Meyer did not qualify for the public transportation exemption to the use tax. Subsequently, the Department of Revenue issued its demand notices wherein it sought payment of the assessed use tax including interest. Thereafter, Meyer Waste paid the $287,171.92 that was demanded.

On September 27, 1996, Meyer Waste filed its original tax appeal in this Court.[1] At the same time, Meyer Waste filed a claim for refund with the Department of Revenue. The Department of Revenue has not acted on Meyer Waste's refund. Additional facts will be provided as necessary.

## ANALYSIS AND OPINION

### Standard of Review

The Court reviews appeals from final determinations of the Department of Revenue de novo and is thus not bound by the evidence or the issues raised at the administrative level. *National Serv-All, Inc. v. Indiana Dep't of State Revenue,* 644 N.E.2d 954, 955 (Ind.Tax Ct.1994); IND.CODE ANN. § 6–8.1–5–1(h). When an appeal involves a claim for exemption, the taxpayer bears the burden to show it falls within the terms of the exemption. *Id.* If the exemption is ambiguous, the court is required to resolve the ambiguity in favor of the Department of Revenue. *Id.*

### Discussion

Meyer Waste argues that it is entitled to the public transportation exemption from the use tax for the years in question. First, Meyer Waste asserts that it is not the owner of the garbage that it hauls. Second, even assuming arguendo that Meyer Waste is the owner, it argues that ownership does not preclude it from receiving the exemption. Third, Meyer Waste contends that if the exemption does not apply to it, then the exemption statute is unconstitutional. The Department of Revenue argues that Meyer Waste does not qualify for the exemption based upon prior precedent in this Court and that the inapplicability of the exemption to Meyer Waste is not violative of either the Indiana or United States constitutions.

The statute at issue provides an exemption to the following tax:

(a) An excise tax, known as the use tax, is imposed on the storage, use, or consumption of tangible personal property in Indiana if the property was acquired in a retail transaction, regardless of the location of that transaction or of the retail merchant making that transaction.

IND.CODE ANN. § 6–2.5–3–2(a) (West 2000). The following statute exempts taxpayers from the use tax in certain circumstances:

(a) The storage, use, and consumption of tangible personal property in Indiana is exempt from the use tax if:

* * * *

(2) the property was acquired in a transaction that is wholly or partially exempt from the state gross retail tax under any part of IC 6–2.5–5, except IC 6–2.5–5–24(b), and the property is being used, stored, or consumed for the purpose for which it was exempted.

IND.CODE ANN. § 6–2.5–3–4(a)(2) (West 2000). The specific exemption at issue, the public transportation exemption, provides as follows:

Transactions involving tangible personal property and services are exempt from the state gross retail tax, if the person acquiring the property or service directly uses or consumes it in providing *public transportation* for persons or property.

IND.CODE ANN. § 6–2.5–5–27 (West 2000) (emphasis added).

This Court has decided three previous cases that have analyzed the application of IND.CODE Section 6–2.5–5–27 to garbage haulers. These cases are *Indiana Waste Systems of Indiana, Inc. v. Indiana Department of State Revenue,* 633 N.E.2d 359 (Ind.Tax Ct.1994) (*Indiana Waste I*), *Indiana Waste Systems of Indiana, Inc. v. Indiana Department of State Revenue,*

---

1. The parties have stipulated that certain property is not included in this appeal because it would not qualify for the exemption. The property includes: "in 1990, $5,846 of property, resulting in a use tax assessment of $293; in 1991, $27,358 of property, resulting in a use tax assessment of $1,368; and in 1992, $8,766 of property resulting in a use tax assessment of $438." (Stipulation of the Parties at 4.)

644 N.E.2d 960 (Ind.Tax Ct.1994) (*Indiana Waste II*), and *National Serv–All, Inc. v. Indiana Department of State Revenue,* 644 N.E.2d 954 (Ind.Tax Ct.1994). In *Indiana Waste I,* this Court held that garbage constituted "property" within the meaning of IND.CODE Section 6–2.5–5–27. *Indiana Waste I,* 633 N.E.2d at 368; *see also National Serv–All,* 644 N.E.2d at 956. In all three cases, this Court also held that in order to qualify for the exemption the hauler must not be the owner of the garbage.[2] *Indiana Waste I,* 633 N.E.2d at 367; *Indiana Waste II,* 644 N.E.2d at 961; *National Serv–All, Inc.,* 644 N.E.2d at 956. Moreover, the carrier must be *predominantly* engaged in transporting property of another to be entitled to the exemption. *Indiana Waste II,* 644 N.E.2d at 961.

■ With respect to ownership, this Court has held that "[a]t the point the garbage is abandoned, the generators of the garbage lose their ownership rights." *Indiana Waste I,* 633 N.E.2d at 367; *see also National Serv–All,* 644 N.E.2d at 956–57. The Indiana Court of Appeals has held that a garbage generator abandons its garbage when it places garbage on the curb or curtilage to be picked up by the garbage hauler unless it takes affirmative steps to retain ownership or control. *Long v. Dilling Mech. Contractors, Inc.,* 705 N.E.2d 1022, 1026 (Ind.Ct.App.1999), *reh'g denied, trans. denied.* "Absent an agreement between a garbage generator and a garbage hauler reserving ownership in the generator, the ownership of the garbage passes when the hauler removes the garbage from the generator." *Indiana Waste II,* 644 N.E.2d at 961; *see also National Serv–All,* 644 N.E.2d at 956.

*A. Ownership of the Garbage*

This Court must first look to whether Meyer Waste owns the garbage that it hauls to determine whether it is entitled to the public transportation exemption. Meyer Waste argues that it does not own the waste that it transports. More specifically, Meyer Waste argues that the generators do not abandon the garbage because the generators demonstrate indicia of ownership (possession and control) by their ability to retrieve their garbage and designate where Meyer will make the final disposition of the garbage, that abandonment of garbage is violative of certain federal and state environmental laws so the generators could not intend to abandon the garbage, that Meyer Waste has no intent to own the garbage, and that Meyer Waste is merely a bailee of the garbage. The Department of Revenue argues that once Meyer takes possession of the garbage, it assumes ownership because Meyer has a better claim to the garbage than anyone else.

■ There is no question that the title to the garbage changes after the generator discards the garbage; the question has been to whom and when does the title pass. *National Serv–All,* 644 N.E.2d at 958. After a very thorough review of the different approaches taken by other jurisdictions regarding this ownership issue, this Court held that absent an agreement otherwise, the ownership of garbage passes from the generator to the hauler when the hauler removes the garbage from the generator. *National Serv–All,* 644 N.E.2d at 958–59; *Indiana Waste II,* 644 N.E.2d at 961. The chief incidents of ownership include: possession, the rights of use and enjoyment, and right of disposal of the property. *National Serv–All,* 644 N.E.2d at 957; *Indiana Waste I,* 633

**2.** The regulations provide the following example:

A company possesses a contract carrier permit to transport stone for a limestone company. It also purchases stone and sells it to its own customers. During the period it is transporting its own stone, it is not engaged in public transportation and tangible personal property and equipment used and consumed in such activities are subject to tax.

IND.ADMIN.CODE tit. 45, r 2.2–5–61(m) Example (1) (1992).

N.E.2d at 367. When the generator relinquishes all the incidents of ownership, the hauler acquires them. *National Serv–All,* 644 N.E.2d at 959. While possession is not tantamount to ownership, it does raise a rebuttable presumption of ownership. *Indiana Waste I,* 633 N.E.2d at 367; *National Serv–All,* 644 N.E.2d at 957.

Meyer Waste seems to argue that despite the fact that it has not provided this Court with any written agreements by its customers that they would maintain ownership of the property after it was picked up by Meyer Waste, there is other evidence that its customers agreed to maintain ownership of the garbage until Meyer Waste unloaded it at a final disposal facility.

### 1.  *Indicia of Ownership*

■ The Court first addresses Meyer Waste's argument that its customers do not abandon their garbage when they place it at the curb because the generators demonstrate indicia of ownership (possession and control) when, on occasion, one may ask to retrieve its garbage. Meyer Waste contends that the customer exercises its control and possession when the customer has disposed of the garbage and then decides that it wants the garbage back. One example Meyer Waste provides is where a woman threw her husband's bowling trophies in the garbage. After the garbage was collected, the woman changed her mind and wanted the trophies back. Meyer Waste located and retrieved the trophies, but they were no longer in the same form. Another example that Meyer Waste presents is where employees of a K-mart store thought that they discarded cash receipts. Meyer Waste allowed the store employees to search for the receipts at the transfer station. Meyer Waste asserts that the customers' requests and Meyer Waste's responses show control and possession by the customer and an intention not to abandon the garbage. Thus, Meyer Waste claims that the generator retains ownership over the garbage. Meyer Waste claims that such customers behave "as though they have a *right* to retrieve their property." (Pet'r Post-trial Br. at 26.)

While Meyer Waste's willingness and ability to retrieve garbage that generators decide they no longer wish to discard may constitute good customer service, it does not demonstrate that the generators maintain possession and control for purposes of ownership. In fact, Meyer Waste admitted at trial that "we are in the service business and try to keep all of our customers happy." (Trial Tr. at 34.) Once the generator placed the garbage on the curb, it had no "right" to demand its return absent an agreement otherwise. *See Indiana Waste I,* 633 N.E.2d at 367. There is no evidence of any such agreement here.

■ Meyer Waste also argues that its customers have a right to and "sometimes do" instruct Meyer Waste as to the location they desire for the disposal of their garbage. (Pet'r Post-trial Br. at 27.) The only evidence that Meyer Waste provides this Court with to support its argument is its own testimony. Meyer Waste does not provide this Court with any corroborative evidence such as provisions in its written contracts with its customers that the customers have a right to designate where they want their garbage to go.[3] Meyer Waste also does not provide the testimony of any of its customers or others that retention of the right to designate where their garbage would go was part of any agreement between Meyer Waste and its customers. Meyer Waste's self-serving

---

3. The Court recognizes that there are some cases where the uncorroborated testimony of a witness may constitute sufficient evidence. *See Heaton v. State,* 483 N.E.2d 58, 59 (Ind. 1985) (holding that "[t]he uncorroborated testimony of a rape victim is sufficient to support a conviction"); *Downey v. State,* 726 N.E.2d 794, 796 (Ind.Ct.App.2000) (stating that "[t]he uncorroborated testimony of a child victim is sufficient to support a conviction of child molesting"), *reh'g denied, trans. denied.*

assertion without more is not probative evidence of control by the generators. *Cf. Dobbins v. State*, 721 N.E.2d 867, 875 (Ind. 1999) (stating that "[i]t is within the province of the trier of fact to determine facts from evidence presented to it and then to judge the credibility of those facts"); *Milburn v. Milburn*, 694 N.E.2d 738, 740 (Ind. Ct.App.1998) (holding that "[i]n reaching its decision, the trial court must review self-serving and uncorroborated testimony by the claimant 'with caution and scrutiny.'"), *trans. denied*. Moreover, the evidence shows that Meyer Waste controls the majority of its customer's final disposal locations, as it contacts and makes the arrangements with landfills to dispose of the garbage that it hauls and handles the disposal fees. Meyer Waste testified that not many of its customers make specific requests indicating where they want their trash to go for its final disposition, but Meyer Waste will take it to a special location if a request is made and will charge the customer accordingly. Even assuming arguendo that these few customers retained the ownership, the majority of Meyer Waste's customers do not request a special location for disposal and thus those customers do not retain ownership. In order to qualify for the exemption the hauler must be predominately engaged in transporting the property of another. *See Indiana Waste II*, 644 N.E.2d at 961. If only some of Meyer Waste's customers retained ownership, Meyer Waste would not be predominately transporting the property of another. *See Indiana Waste II*, 644 N.E.2d at 962 (holding that a garbage hauler was not entitled to the exemption because only 17.7 percent of its annual revenue came from hauling the garbage of another).

### 2. Abandonment and the Environmental Laws

█ Meyer Waste next argues that if a generator abandons its garbage at the curb for pick up by the garbage hauler, it is violating numerous laws imposing liability for the improper or illegal abandonment or disposal of non-hazardous waste. Therefore, it contends that a generator cannot intend to abandon the garbage when it sets it on the curb for pick up. Among other statutes, Meyer Waste cites IND.CODE ANN. Section 13–30–2–1(4)–(6) (West 1998) to support its argument. That statute provides in relevant part:

A person may not do any of the following:

\* \* \* \*

(4) Deposit or cause or allow the deposit of any contaminants or solid waste upon the land, *except* through the use of sanitary landfills, incineration, composting, garbage grinding, or *another method acceptable to the solid waste management board*.

(5) Dump or cause or allow the open dumping of garbage or of any other solid waste in violation of rules adopted by the solid waste management board.

(6) Dispose of solid waste in, upon, or within the limits of or adjacent to a public highway, state park, state nature preserve, or recreation area or in or immediately adjacent to a lake or stream, except:

(A) in proper containers provided for sanitary storage of the solid waste; or

(B) as a part of a sanitary landfill operation or other land disposal method approved by the department.

I.C. § 13–30–2–1(4)(6) (emphasis added). Meyer Waste has not provided nor has the Court found any authority to support Meyer Waste's proposition that its customers' placement of (abandonment of) non-hazardous garbage at the curb for pick up constitutes a violation of acceptable methods or rules prescribed by the solid waste management board. Moreover, Meyer Waste has not shown how an individual or business putting its garbage out for pick up by a garbage hauler is disposing of garbage in an unlawful manner within the limits of a public highway, state park, state nature preserve, recreation or in or near a lake or stream.

Meyer Waste also quotes a statute that prohibits the illegal dumping of waste onto another's land. *See* IND.CODE ANN. § 13–30–3–13(d) (West 1998). That statute is inapplicable to this case because there are no allegations here that generators are placing their garbage out for pick up on the land of another. This case only raises the issue of the abandonment of garbage for pick up by a garbage hauler from one's own land.

Finally, Meyer Waste quotes a statute that defines a nuisance, but does not state how its customers' placement of garbage out for pick up constitutes a nuisance. *See* IND.CODE ANN. § 34–19–1–1 (West 2000). In addition, Meyer Waste does not cite any authority to support its assertion that placement of garbage in the proper containers for pick up by a garbage hauler constitutes a nuisance.[4] Consequently, Meyer Waste's argument that if a garbage generator abandons its garbage when it sets it out for pick up, it commits a criminal offense and therefore the generator could not have intended to abandon it, is without merit.[5]

### 3. Intent to Own

■ Meyer Waste next argues that even if the garbage generators abandon their garbage at the curb it cannot be presumed that the title passes to Meyer Waste. Instead, Meyer Waste asserts that if the generators abandon their gar-

bage at the curb, the title passes to the State or to the owner of the landfill. As such, Meyer Waste challenges this Court's existing precedent in *National Serv–All,* 644 N.E.2d at 959 and *Indiana Waste II,* 644 N.E.2d at 961. As this Court stated in *Indiana Waste II,* absent an agreement between the generator of the garbage and the garbage hauler reserving ownership in the generator, the ownership of the garbage passes to the hauler when the hauler removes it from the generator. *Indiana Waste II,* 644 N.E.2d at 961. Meyer Waste contends that it did not intend to take ownership and therefore it cannot be deemed to have accepted ownership. The only evidence that Meyer Waste presents of its lack of intent is testimony by its CEO that it did not intend to become the owner because there was no business purpose to be served by doing so and because ownership would mean that it would incur additional environmental liability. (Pet'r Post-trial Br. at 28.) Meyer Waste's CEO also testified that it intended only to provide transportation services and not to obtain ownership, which was demonstrated by its assistance to customers when they wanted their garbage returned. As noted *supra,* this is not evidence of an agreement between Meyer and its customers that the customers retain ownership of the garbage once it is removed from the customer's/generator's premises. *See Indiana Waste II,* 644 N.E.2d at 961. Therefore, this Court concludes based upon past pre-

4. Meyer Waste cites to *Railroad Commission v. Waste Management of Texas,* 880 S.W.2d 835 (Tex.App.1994) to support its proposition that garbage generators cannot abandon their garbage. It's reliance on that case is misplaced. Following a brief discussion of the abandonment of asbestos-containing solid waste, the Court of Appeals of Texas stated: "[w]e do not decide [whether a generator could abandon asbestos-containing solid waste], however, because in the present case the parties stipulated." *Id.* at 843–44.

5. This Court notes that there may be situations where abandonment or mishandling of garbage may be in violation of certain laws. *See Starzenski v. Elkhart,* 659 N.E.2d 1132, 1140–41 (Ind.Ct.App.1996) (stating that

where large amount of trash and debris that was located in party's yard and house for approximately two-years, city properly entered the property to remove it as it constituted a nuisance), *trans. denied, cert. denied,* 519 U.S. 1028, 117 S.Ct. 582, 136 L.Ed.2d 512 (1996); *State v. Money,* 651 N.E.2d 344, 346 (Ind.Ct.App.1995) (holding that garbage constituted solid waste and that information charging defendant with burning garbage in the back yard of his residence was sufficient to constitute the offense of illegal open burning under IND.CODE ANN. section 13–7–4–1), *trans. denied.* However, Meyer Waste has not demonstrated how its customers violate any of these laws by placing their trash out for pick up.

cedent, that when Meyer Waste picked up the garbage from the curb, it became the owner of the garbage.

### 4. Bailment

■ Meyer Waste next argues that it is entitled to the public transportation exemption because it is the bailee of the generators' garbage. A bailment is defined as an express or implied agreement between a bailor and bailee. *Norris Auto. Serv. v. Melton,* 526 N.E.2d 1023, 1025 (Ind.Ct.App. 1988). A bailment is created where bailed property is delivered into the bailee's exclusive possession, and the bailee accepts the property. *Id.* Because this Court concluded above that Meyer Waste is the owner of the property, it cannot be the bailee. Therefore, this contention by Meyer Waste does not further its position.

Meyer Waste has not shown that its customers agreed to retain ownership. Moreover, none of Meyer Waste's arguments demonstrate that anyone other than Meyer Waste owns the garbage that it picks up from its customers, the generators. Therefore, this Court holds that based upon established precedent, Meyer Waste owns the garbage that it hauls.

### B. Public Transportation

■ Meyer Waste argues that even if it owns the garbage, it is entitled to the public transportation exemption from the use tax. More specifically, Meyer Waste argues that the requirement stated in the regulations that the transportation be "for consideration" does not preclude a transporter who hauls its own garbage from receiving the exemption.

■ This Court has previously noted that the public transportation aspect of IND.CODE Section 6–2.5–5–27 requires that the transporter perform its function for consideration. *National Serv–All,* 644 N.E.2d at 956; *Indiana Waste II,* 644 N.E.2d at 961. This requirement is set forth in the regulation that defines public transportation as follows:

> [p]ublic transportation shall mean and include the movement, transportation, or carrying of persons and/or property *for consideration* by a common carrier, contract carrier, household goods carrier, carriers of exempt commodities, and other specialized carriers performing public transportation service *for compensation* by highway ... which carriers operate under authority issued by, or are specifically exempt by statute from economic regulation of, the public service commission of Indiana, the Interstate Commerce Commission, ... the U.S. Department of Transportation ...; however, the fact that a company possesses a permit or authority issued by the P.S.C.I., I.C.C. etc., does not of itself mean that such a company is engaged in public transportation unless it is in fact engaged in the transportation of persons or property *for consideration* as defined above.

IND.ADMIN.CODE tit. 45, r 2.2–5–61(b) (1996) (emphasis added). In three prior cases this Court has held that "for consideration" means that someone other than the transporter must own the property being transported. *National Serv–All,* 644 N.E.2d at 956; *Indiana Waste II,* 644 N.E.2d at 961; *Indiana Waste I,* 633 N.E.2d at 367. If the carrier is not predominantly engaged in transporting the property of another, it is not entitled to the exemption. *Indiana Waste II,* 644 N.E.2d at 961; *National Serv–All,* 644 N.E.2d at 956. Nonetheless, Meyer Waste challenges the existing precedent by arguing that neither the phrase "for consideration" nor the phrase "for compensation" in the regulation requires that it transport the property of another. Meyer Waste argues that if the language in the regulation stated that the transportation must be "for hire" instead of "for consideration," then the transporter would be required to transport the property of another. To support its argument, Meyer Waste cites to cases from other jurisdictions that dis-

tinguish between "for hire" and "for compensation."[6] (Pet'r Post-trial Br. at 41.) While it may be true that in some other jurisdictions one who transports its own goods and adds a transportation charge is deemed to have transported the goods "for compensation" or "for consideration," that is not the law in the state of Indiana.

Meyer Waste asserts that in both *Indiana Waste I* and *National Serv–All* this Court "erroneously read" *State Department of Revenue v. Calcar Quarries, Inc.* as standing for the rule that in order to be eligible for the public transportation exemption, the hauler must transport the property of another.[7] (Pet'r Post-trial Br. at 47); *State Department of Revenue v. Calcar Quarries, Inc.*, 182 Ind.App. 84, 394 N.E.2d 939 (1979); *Indiana Waste I*, 633 N.E.2d at 367;[8] *National Serv–All*, 644 N.E.2d at 956. Meyer Waste contends that *Calcar* did not address the question of who owned the stone that was being transported on Calcar's trucks. Moreover, Meyer Waste contends that the Indiana Court of Appeals implicitly held in *Calcar* that ownership of the property one is hauling is irrelevant for the purpose of determining whether the transportation is "for consideration." (Pet'r Post-trial Br. at 43.) *Calcar*, 182 Ind.App. 84–88, 394 N.E.2d 939–41.

In *Calcar*, crushed stone was "*sold at the Calcar Quarry Plant* either to be delivered by trucks owned by others, or to be delivered by the Calcar trucks." *Calcar*, 394 N.E.2d at 941 (emphasis added). Calcar's hauling of property to its own job sites amounted to no more than 10 percent of its crushed stone sales. *Id.* In *Calcar*, the Court of Appeals did consider the issue of who owned the stone that was being transported. The State's argument in *Calcar* was that "Calcar was not engaged in public transportation but instead was engaged primarily in the service of hauling *its own product.*" *Id.* Restated, this argument is that in order to be engaged in public transportation one must haul the product of another. In *Calcar*, the Court of Appeals held that Calcar transported property for consideration and satisfied the definition of public transportation. *Id.*

When the facts of *Calcar* are analyzed, it can be reasonably interpreted as holding that to be engaged in public transportation one must haul the property of another. The facts clearly state that the stone was sold at Calcar's Plant, not at the purchasers chosen delivery location. As such, the purchaser became the owner at the time of sale and could pay Calcar to haul its stone or arrange for another hauler to transport it. This interpretation is furthered by the fact that "Calcar sold its products F.O.B. Calcar's plant."[9] *Id.* Meyer Waste incorrectly states that in *Calcar* F.O.B. meant "that the seller of goods bears the expense and risk of loss for the delivery of goods to a *buyer*—i.e., that the seller retains titled [sic] during delivery." (Pet'r Post-trial Br. at 44, n. 13.) (emphasis added). In *Calcar* the Court of Appeals noted that "when the term is F.O.B. the place of shipment, the seller must at that place ship the goods in the manner provided in this article [chapter] (section [26–1–]2–504) and bear the expense and risk of putting them into the possession of the *carrier.*" *Calcar*, 394 N.E.2d at 941 n. 2. In such a situation, title to the goods passes from the seller to the buyer at the point of shipment. *See Weil*

**6.** None of the cases cited by Meyer Waste are cases involving garbage haulers.

**7.** The Court notes that it also held that "the carrier must not own the property being transported" in order to qualify for the exemption in *Indiana Waste II*, 644 N.E.2d at 961.

**8.** All three garbage hauling cases issued by this Court cite both *Calcar* and IND.ADMIN.CODE

tit. 45, r. 2.2–5–61. *See Indiana Waste I*, 633 N.E.2d at 367; *Indiana Waste II*, 644 N.E.2d at 961; *National Serv–All*, 644 N.E.2d at 956.

**9.** This court assumes based upon footnote number two in Calcar that the Court of Appeals interpreted "F.O.B. Calcar's plant" to mean that Calcar's plant was the place of shipment. *Calcar*, 394 N.E.2d at 941 n. 2.

*v. Stone,* 33 Ind.App. 112, 115, 118, 69 N.E. 698, 699, 700 (1904) (holding where contract provided for sale of goods F.O.B. Fort Wayne, Indiana, the title to the goods passed to the buyer at shipment from Fort Wayne); *Cf. Gross Income Tax Division v. Shane Mfg. Co.,* 244 Ind. 279, 191 N.E.2d 310, 311, 312 (1963) (stating that where all shipments were F.O.B. the seller's plant at Evansville, Indiana title was transferred to the buyer at the seller's plant in Evansville when seller delivered goods to the buyer's trucks). Consequently, it appears that the title to the stone passed once the stone was given to the carrier for shipment. *See id.* Because Calcar ran its delivery business separate from its quarry, asphalt, and ready mix operation it appears that it acted separately as a carrier.[10] Therefore, it is evident that when Calcar hauled the stone to the customers it was hauling the property of another because title had already passed to the customer.

Even assuming arguendo that Calcar was carrying its own property, the only reasonable reading of Ind.Admin.Code tit. 45, r 2.2–5–61(b) (1996) is that "for consideration" and "for compensation" mean that the transportation must be of another's property. Otherwise a purchaser would be paying to have someone else's property hauled. It is rare that in the ordinary course of business the purchaser would pay for the seller to haul the seller's own property. However, this is not to say that there are not occasions where pursuant to a contract, a party might pay for the shipping before the title actually passes to it.

This Court reaffirms its holdings in *Indiana Waste I, Indiana Waste II,* and *National Serv–All* that in order to qualify for the transportation exemption to the use tax, one must haul the property of another. Consequently, Meyer Waste's argument that it qualified for the exemption despite the fact that it hauls garbage that it owns cannot prevail.

### C.   Constitutional Challenges

Meyer Waste next asserts that the past applications of the public transportation exemption in *Calcar, Indiana Waste* I & II, and *National Serv–All* are unconstitutional because they have "created arbitrary classifications among transporters or carriers providing public transportation of property for consideration or compensation paid by another."[11]   (Pet'r Post-trial Br. at 47.)   Meyer Waste contends that these classifications are violative of the guarantees of equal protection under the 14th amendment, section one of the United States Constitution.[12]

10.  The money received for Calcar's hauling operations was kept separate from its quarry, asphalt and ready mix operations and separate accounting also done for the hauling operations. *Calcar,* 394 N.E.2d at 941. The stone was charged separate from any hauling charge that was added if the stone was to be delivered by Calcar's trucks. *Id.*

11.  Meyer Waste posits that the ownership classifications in *Calcar, Indiana Waste I & II,* and *National Serv–All* violate the guaranty of a "uniform and equal rate of property assessment and taxation" under Article 10, Section 1 of the Indiana Constitution.   Article 10, Section 1 provides in relevant part:

[t]he General Assembly shall provide, by law, for a uniform and equal rate of *property* assessment and *taxation* and shall prescribe regulations to secure a just valuation for taxation of all property, both real and personal.

(emphasis added).   Our Supreme Court has held that Article 10, Section 1 of our Constitution applies only to property taxes, not to excise taxes. *Lutz v. Arnold,* 193 N.E. 840, 846, 208 Ind. 480, 496, 503 (Ind.1935); *See also* 1935 Op.Atty.Gen. at 29.   The use tax at issue is an excise tax and not a property tax. *See* I.C. § 6–2.5–3–2(a); *Tri–States Double Cola Bottling Co. v. Department of State Revenue,* 706 N.E.2d 282, 283 (Ind.Tax Ct.1999) (stating that Indiana imposes as excise tax (use tax) on the use, storage or consumption of tangible personal property in Indiana). Consequently, Article 10, Section 1 is not applicable to Meyer Waste's case.

12.  Meyer Waste also asserts that the ownership classifications in *Calcar, Indiana Waste I & II,* and *National Serv–All* violate Article I, Section 23 of the Indiana Constitution (the Privileges and Immunities Clause) and seems to meld this argument into the framework of its Federal equal protection claim.   The Privi-

The 14th amendment provides in relevant part:

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; *nor deny to any person within its jurisdiction the equal protection of laws.*

U.S. CONST.AMEND. XIV, § 1 (emphasis added). Generally, if neither a suspect class nor fundamental right is involved, to pass equal protection muster a statute must meet a rational basis test. *Area Interstate Trucking, Inc. v. Indiana Dep't of Revenue,* 605 N.E.2d 272, 275 (Ind.Tax Ct.1992), *cert. denied,* 510 U.S. 864, 114 S.Ct. 183, 126 L.Ed.2d 142 (1993); *Indiana High Sch. Athletic Ass'n, Inc. v. Carlberg,* 694 N.E.2d 222, 236 (Ind.1997), *reh'g denied.* This test merely requires "that the law be rationally related to a legitimate governmental purpose."

*Indiana High Sch. Athletic Ass'n, Inc.,* 694 N.E.2d at 236 (internal quotations omitted). When discussing the State's power to levy taxes, our Court of Appeals has previously noted that

[T]here is a point beyond which the State cannot go without violating the Equal Protection Clause. The State must proceed upon a rational basis and may not resort to a classification that is palpably arbitrary. The rule often has been stated to be that the classification must rest upon some ground of difference having a fair and substantial relation to the object of the legislation.

*Championship Wrestling, Inc. v. State Boxing Comm'n,* 477 N.E.2d 302, 305, (Ind.Ct.App.1985), *reh'g denied, trans. denied* (quotation marks omitted) (quoting *Allied Stores of Ohio, Inc. v. Bowers,* 358 U.S. 522, 527, 79 S.Ct. 437, 441, 3 L.Ed.2d 480, (1959)). There is a strong presumption that statutes are constitutional and the burden is on the challenger to clearly demonstrate the statute's invalidity with all doubts being resolved in favor of the statute. *Area Interstate Trucking,* 605 N.E.2d at 276. The United States Su-

leges and Immunities Clause of the Indiana Constitution provides:

The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, cannot equally belong to all citizens.

Ind. Const. art. I, § 23. For many years, our Supreme Court analyzed claims made under the Privileges and Immunities Clause using the same methodology as that applied in federal equal protection analysis. *Indiana High Sch. Athletic Ass'n, Inc. v. Carlberg,* 694 N.E.2d 222, 239 (Ind.1997). However, in *Collins v. Day,* our Supreme Court held that the analytical framework required to resolve Privileges and Immunities Clause claims did not include "applying varying degrees of scrutiny for different protected interests," an integral element of federal equal protection analysis. *Collins v. Day,* 644 N.E.2d 72, 80 (Ind. 1994). Instead, the same level of scrutiny is applied to analyze the constitutional propriety of "any and all" grants of unequal privileges or immunities. *Id.* The two-part test for determining a statute's validity under Article 1, Section 23 that our Supreme Court announced in *Collins* is as follows:

First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics which distinguish the unequally treated classes. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated. Finally, in determining whether a statute complies with or violates Section 23, courts must exercise substantial deference to legislative discretion.

*Id.* Meyer Waste merely makes a bare assertion that Article 1, Section 23 has been violated without developing any independent argument with respect thereto. This Court will not make Meyer Waste's argument for it. *Cf. North Park Cinemas, Inc. v. State Bd. of Tax Comm'rs,* 689 N.E.2d 765, 769 (Ind. Tax Ct.1997) (holding that a hearing officer did not have an affirmative duty to make a case on behalf of a party, rather a party is responsible for presenting evidence and an argument in support of its position). Consequently, the Court will only address Meyer Waste's claim that the 14th Amendment to the United States Constitution has been violated.

preme Court has stated that "a classification, though discriminatory, is not arbitrary nor violative of the Equal Protection Clause of the Fourteenth Amendment if any state of facts reasonably can be conceived that would sustain it." *Allied Stores,* 358 U.S. at 528, 79 S.Ct. at 441.

The 14th Amendment does not impose any specific limitation upon the power of Indiana to classify persons and things for tax purposes other than to prohibit arbitrary classifications. *Indiana Aeronautics Comm'n v. Ambassadair, Inc.,* 267 Ind. 137, 142, 368 N.E.2d 1340, 1343 (1977), *cert. denied,* 436 U.S. 905, 98 S.Ct. 2235, 56 L.Ed.2d 403 (1978). "It is only in the context of a particular statute that classification and the criteria which define them can be judged against the equal protection clauses." *Id.* at 143, 368 N.E.2d at 1344. A court is required to make an independent determination of whether any reasonably conceivable purpose exists which would support the constitutionality of the classification employed. *Id.* at 144; 368 N.E.2d at 1344. "While the State is not at liberty to resort to a tax classification which is palpably arbitrary, any classification is valid provided it rests upon some ground of difference having a fair and substantial relation to the object of the legislation so that all persons similarly circumstanced are treated alike." *Area Interstate Trucking, Inc.,* 605 N.E.2d at 277 (citing *Miles v. Dep't of Treasury,* 209 Ind. 172, 188, 199 N.E. 372, 380, (1935), *appeal dismissed,* 298 U.S. 640, 56 S.Ct. 750, 80 L.Ed. 1372 (1936); *Lutz v. Arnold,* 208 Ind. 480, 499, 193 N.E. 840, 847 (1935)). In addition, "[s]ufficient differences in the method of doing business may be justification for separate classification and differential tax treatment." *Id.* (citing *State Bd. of Tax Comm'rs v. Jackson,* 283 U.S. 527, 537–43, 51 S.Ct. 540, 543–45, 75 L.Ed. 1248 (1931), *reh'g denied; Miles,* 209 Ind. at 190, 199 N.E. at 380). A court "cannot assume that state legislative

enactments were adopted arbitrarily or without good reason to further some legitimate policy of the state." *Allied Stores,* 358 U.S. at 528, 79 S.Ct. at 442. A court cannot know with certainty and it is not important that a court know the "special reasons, motives or policies" of the legislature because a state legislature "need not explicitly declare its purpose." *Id.* Assuming arguendo that the Court's interpretation of IND.CODE Section 6–2.5–5–27 creates a classification because owners of their own property do not receive the exemption while those that haul the property of others receive the exemption, this Court addresses Meyer Waste's claims below.

### 1. Rational Basis

Meyer Waste argues that there is no rational basis for interpreting the public transportation exemption to apply only to those who transport the property of others. It is obvious from the plain language of the public transportation exemption that its purpose was to provide an exemption to the use tax for those who provide public transportation. As Meyer Waste points out, the purpose of the statute may be to reduce the cost to the carrier of providing transportation services to the public so that the carrier would pass on the savings to the public by charging it lower prices for transporting property. (Pet'r Post-trial Br. at 51.) This is a legitimate governmental purpose. *See Indiana High School Athletic Ass'n, Inc.,* 694 N.E.2d at 236.

A reading of the statute that the exemption is available only to those carriers that haul property of another has a substantial relation to its purpose of providing a tax break to those who provide public transportation. *See* discussion *supra,* part B. Otherwise the benefit would not be just to the "public," but rather the benefit would also go to the carriers when they transported their own property for their own purposes.[13] There is no indication in the

---

**13.** As stated *supra,* it is rare that under ordinary circumstances members of the public

would pay a carrier to transport property owned by that carrier. *See supra* part B. It

statute that it is to be applied to carriers who haul their own property, which would be a form of private transportation. If one is hauling its own property it is reasonable to assume that it is for its own purposes, in which case, the public would not be benefited by the exemption. Therefore, this Court cannot say that the classification created by this Court's interpretation of the statute as exempting only those who haul the property of another was not founded upon a reasonable distinction in state policy that has a fair and substantial relation to the object of the exemption or that no set of facts can be conceived to sustain our interpretation. *See Allied Stores*, 358 U.S. at 529, 79 S.Ct. at 442; *Championship Wrestling*, 477 N.E.2d at 305. Thus, there is a rational basis for this Court's application of the public transportation exemption.

### 2. Arbitrariness

■ This Court next addresses Meyer Waste's contentions that this Court's interpretation of the statute as creating a classification that only those that transport the property of others receive the exemption is arbitrary. *See Championship Wrestling*, 477 N.E.2d at 305. First, Meyer Waste argues that it is arbitrary to allow a furniture mover to receive the exemption but deny that same exemption to a garbage hauler because both use public roads and highways, pay road taxes, pay truck license fees, pay personal property taxes on equipment, are subject to the Department of Transportation regulations, and drivers for both are required to have a commercial license. However, Meyer Waste does not present this Court with any cases or other evidence that similarly situated furniture haulers have been or would be treated different from similarly situated garbage haulers. The bottom line is that any hauler would be denied the exemption if it was transporting its own property. The cases

have consistently held that all haulers who own the property that they haul are not entitled to the exemption. *See Indiana Waste I*, 633 N.E.2d at 367; *Indiana Waste II*, 644 N.E.2d at 961; *National Serv–All*, 644 N.E.2d at 956. Therefore, this argument is without merit.

Meyer Waste next claims that the classification is arbitrary because it is based upon the ownership rights in the property being transported. It claims that this classification is arbitrary because "a carrier can claim the Public Transportation Exemption if the customer who compensates the carrier for transportation owns the property *during* or *immediately after* it is transported, but not if the customer owns the property *immediately before* it is transported." *Id.* (original emphasis). Meyer Waste bases its contention regarding these allegedly arbitrary classifications upon its assertion that the holdings in *Indiana Waste* and *National Serv–All* are different from the holding in *Calcar*. More specifically, Meyer Waste asserts that in *Calcar* the transporter was entitled to the exemption "regardless of whether the customer owned the property while it is [sic] being transported on the carrier's truck, so long as the customer paid consideration for transporting the property to the customer's place of business." (Pet'r Post-trial Br. at 48.) In other words, Meyer Waste is arguing that the arbitrariness exists because *Calcar* holds that it does not matter whether the hauler owns the property it transports while *Indiana Waste* and *National Serv–All* hold that a hauler is only entitled to the exemption if it does not own the property that it transports. As noted *supra, Calcar* stands for the proposition that to qualify for the exemption the hauler must transport the property of another. *See supra.* Therefore, this Court concludes that Meyer Waste's argument is without merit.

would seem more logical that a carrier would be responsible for the costs of transporting its

own property.

Finally, Meyer Waste claims that the classification of carriers by those that own the property that they carry and those that carry the property of another is arbitrary in violation of equal protection because the classification is based solely on the nature of property being transported. More specifically, Meyer Waste argues that garbage haulers are treated differently than are other types of transporters, assuming arguendo that garbage is unique because it has lost its value to customers (is considered abandoned) and ownership passes to the haulers upon pick up. Meyer Waste asserts that if it hauled any type of property other than garbage this Court would not be "engaging in an analysis of whether or not the customer had 'abandoned' the property, and whether or not ownership had (somehow) passed to [Meyer Waste]." (Pet'r Post-trial Br. at 54.) As such, it seems that Meyer Waste is arguing that it is being treated arbitrarily only because it hauls garbage.

Meyer Waste argues that garbage is property within the meaning of IND.CODE Section 6–2.5–5–27 and that there is no reasonably conceivable purpose for distinguishing among various types of property when determining eligibility for the exemption. Again, Meyer Waste supports this argument with its assertion that in *Calcar* the Court of Appeals held that it did not matter whether the carrier owned the stone and that the only relevant inquiry was whether the transportation was being done "for compensation." (Pet'r Post-trial Br. at 55.) Meyer Waste argues that the only difference between it and Calcar is that Meyer Waste hauls garbage. However, as the Court held *supra*, there is another difference between Calcar and Meyer Waste. That difference is that Calcar did not own the property that it was delivering and Meyer Waste did own the property (which happened to be garbage) that it was transporting.

The use tax is not being imposed upon Meyer Waste because it hauls garbage; it is being taxed because it owns the garbage that it hauls. Any hauler that owns its own property would not be eligible for the exemption.[14] Furthermore, garbage haulers and all other haulers that predominantly haul the property of another and meet the other requirements of the public transportation statute would be eligible for the exemption. Consequently, there is no arbitrariness in how the Courts have applied the public transportation exemption and there can be no violation of equal protection under the Federal Constitution because all companies who haul their own property are treated equally.

This Court finds that IND.CODE Section 6–2.5–5–27 has a legitimate government purpose and this Court's interpretation of the classifications created by it rest upon differences that have a fair and substantial relation to the purpose of the statute. *See Indiana High Sch. Athletic Ass'n,* 694 N.E.2d at 236. *Championship Wrestling,* 477 N.E.2d at 305. Meyer Waste has not demonstrated that the classifications are palpably arbitrary. *See id.* Therefore, Meyer Waste has not met its burden of demonstrating that IND.CODE Section 6–2.5–5–27 is unconstitutional. *See Area Interstate Trucking,* 605 N.E.2d at 276. Thus, Meyer Waste's constitutional challenge claim cannot succeed. *See id.*

## CONCLUSION

Meyer Waste has not demonstrated that it is predominately engaged in transporting the property of another. *See Indiana Waste II,* 644 N.E.2d at 961; *National Serv-All,* 644 N.E.2d at 956; *Indiana Waste I,* 633 N.E.2d at 367. Consequently, Meyer Waste has not met its burden of proving that it fell within the terms of the public transportation exemption and there-

14. Therefore, there is also no arbitrariness among garbage haulers. As with any other hauler, if a garbage hauler transports the property of another and meets the statute in all other respects, it is entitled to the public transportation exemption.

fore the Court AFFIRMS the Department of Revenue's final determination. *See National Serv–All,* 644 N.E.2d at 955. Moreover, this Court concludes that Meyer Waste has not demonstrated that this Court's application of the public transportation exemption is arbitrary and therefore unconstitutional.